FURLONG COMPANIES,
INC., Respondent,

v.

CITY OF KANSAS CITY,
Missouri, Appellant.

No. SC 86741.

Supreme Court of Missouri,
En Banc.

March 21, 2006.

Rehearing Denied May 2, 2006.

Douglas M. McMillan, Galen Beaufort, Kansas City, for appellant.

Robert A. Horn, K. Christopher Jayaram, Kansas City, for respondent.

Paul A. Campo, Lee's Summit, Stephen P. Chinn, Stinson Morrison Hecker LLP, Kansas City, amicus curiae.

WILLIAM RAY PRICE, JR., Judge.

## I. Introduction

The City of Kansas City, Missouri, appeals from a judgment in mandamus directing that it grant a preliminary plat to Furlong Companies, Inc. and awarding actual damages of $224,871.00 and attorney's fees in the amount of $148,435.20 against the city under 42 U.S.C. section 1983 arising from the denial of the plat. The city complains that the trial court improperly engaged in *de novo* review applicable to noncontested case matters under the Missouri Administrative Procedure Act. Section 536.150.[1] The city contends that the review should have been limited to the record before the city council because the proceeding was one in mandamus. The city also contends that the evidence was not sufficient to support the 42 U.S.C. section 1983 judgment against it.

The trial court's judgment granting mandamus and awarding actual damages and attorney's fees is affirmed as modified.

## II. Facts

Furlong owned 2.76 acres of real property located in Kansas City, Jackson County, Missouri, on the north side of Red Bridge Road near Holmes Road. The property is located in an area that is zoned for intermediate business, high buildings. Furlong intended to subdivide the land into three lots and develop it for commercial use, with the land ultimately to contain two fast food restaurants and a car wash. Furlong

---

1. All state statutory references are to RSMo 2000.

purchased the property largely because of the established favorable zoning, which would allow for the intended uses without the difficulty of rezoning.

Furlong's plan for development of the land was to first construct a car wash and, once the land was finally platted and properly subdivided, sell or lease the other two tracts of land for the construction of fast food restaurants. The proceeds from the sale or lease of the subdivided tracts would then be used to repay or offset Furlong's purchase and construction loans. Prior to completing the platting process, Furlong entered into a contract to sell one of the tracts to a developer for the construction of a Wendy's restaurant and entered into a contract to lease the other tract to a developer for the construction of a Sonic drive-in. The terms of these contracts required that the land be properly and finally platted and subdivided before construction.

On October 1, 1999, Furlong filed an application for approval of a preliminary plat for the property with the city. On November 3, 1999, Furlong and its engineers met with the city's plats review committee to receive comments on the preliminary plat. The committee reviewed Furlong's application and suggested certain conditions that needed to be met prior to approval. On December 7, 1999, at a public hearing, city staff recommended that the city plan commission approve the preliminary plat application subject to the conditions. Furlong agreed to all of the conditions of approval set forth by city staff. Notwithstanding the city staff's recommendation, the commission voted to deny Furlong's preliminary plat application. The commission did not issue findings of fact and conclusions of law as to why Furlong's application was denied.

City staff told Furlong that they could not discuss the denial of the application "for fear of litigation." Furlong attempted to submit a revised preliminary plat reflecting compliance with the conditions, but city staff refused to accept it. Furlong then requested that the plat application be submitted to the city council. On February 3, 2000, a proposed ordinance reflecting Furlong's preliminary plat application was introduced to the city council for first reading.

On March 1, 8, 15, and 29 of 2000, the Planning, Zoning & Economic Development Committee (the "P & Z committee"), a subcommittee of the full city council, held public hearings regarding approval of Furlong's preliminary plat. During the course of those hearings, the P & Z committee heard comments from area residents both in favor of and in opposition to the plat application. The city also requested a traffic study to analyze the effect of Furlong's proposed plat on the surrounding area. Furlong complied with the traffic study request. The study ultimately concluded that Furlong's plat would have little impact on the existing traffic system.

At the March 15, 2000, hearing the city requested more time and information regarding the traffic study. On March 29, 2000, Furlong provided the P & Z committee with a revised, more comprehensive traffic study, which also concluded that Furlong's proposed plat would have little impact on traffic in the surrounding area. At the March 29 meeting the P & Z committee voted the matter "off the docket," meaning that it would not be reviewed again for up to six months.

On April 13, 2000, the chairman of the P & Z committee called Furlong's preliminary plat ordinance out of committee for docketing before the entire city council. The chairman stated that the city's legal counsel had attended a closed session and advised that there was no legal basis for rejecting Furlong's application. On May 4, 2000, the city council voted not to ap-

prove Furlong's preliminary plat by a vote of 9 to 4. Again, no findings of fact or conclusions of law were issued in regard to the city's denial of Furlong's preliminary plat.

Furlong filed suit against the city on May 9, 2000, seeking an order of mandamus compelling the city to approve its plat application and also seeking damages under 42 U.S.C. section 1983. After hearing evidence on Furlong's mandamus claim, the trial court entered an order of mandamus against the city on November 29, 2000, compelling the city to approve Furlong's plat application immediately and without undue delay. In so doing, the trial court expressly found that the city's action in denying Furlong's preliminary plat application was unlawful, unreasonable, arbitrary, and capricious. After the entry of the mandamus order, Furlong moved forward with its development plans. Today, the property has been completely developed and contains a car wash, a Wendy's restaurant, and a Sonic drive-in.

Subsequent to the mandamus trial, the trial court heard evidence on Furlong's additional claim for damages under 42 U.S.C. section 1983. The trial court found "the City's conduct to be more than a mere violation of the law but that the action of the City rose to the level of truly irrational." The trial court awarded Furlong $224,871.00 in actual damages and $148,435.20 for costs and attorney's fees. The city appeals.

### III. Points of Error

The city seeks review asserting four points of error.

I. The trial court erred in granting a writ of mandamus because it exceeded its permissible scope of review by hearing the proceeding de novo in that review of a plat application denial is limited to the infor-mation presented to the city council.

II. The trial court erred in granting a writ of mandamus because there was insufficient evidence to show that the city council's decision was arbitrary or capricious in that the information the city council reviewed was sufficient to support the city council's decision to deny the preliminary plat application.

III. The trial court's grant of judgment on the substantive due process claim was clearly erroneous because there was no substantial evidence to support a finding that the city acted in a clearly irrational manner when its city council denied Furlong's preliminary plat application in that the trial court erroneously declared the law and in that the plat did not comply with the city's subdivision ordinance and this was a rational basis for the city's denial and in that Furlong used the process available and therefore was not denied due process

IV. The trial court's award of damages was clearly erroneous because there was no substantial evidence to support a finding that the city proximately caused the damages award to Furlong.

### IV. General Legal Background

#### A. Zoning and Plat Approval

Zoning and plat approval for subdivision development are crucial tools for the orderly development of our cities and counties. Yet, these tools impact significantly on the freedom of landowners to do what they might want with their real property and on the relative value that any particular piece of property might have.

Zoning and plat approval represent different types of authority in political subdivisions. "Zoning" is the exercise of legislative authority as to what land uses are in the interest of the public for particular areas within the political subdivision. The governmental body has great latitude in this regard. "Plat approval" is the ministerial application of zoning requirements, uniformly, to all particular parcels within the zoned area. Far less latitude exists in this regard, as each landowner is entitled to equal application of the zoning and planning laws applicable to his property. *See generally,* Yokely, E.C., Law of Subdivisions 217–318 (2d ed.1981).

## B. Missouri law regarding subdivision plat approval

Sections 445.030 and 89.410 set forth the procedures and mechanisms by which Missouri cities may govern the subdividing of land. Section 445.030, in relevant part, states:

> ... that if such map or plat be of land situated within the corporate limits of any incorporated city, town or village, it shall not be placed of record until it shall have been submitted to and approved by the common council of such city, town or village, by ordinance, duly passed and approved by the mayor, and such approval endorsed upon such map or plat under the hand of the clerk and the seal of such city, town, or village ...

Section 89.410.1 states:

> The planning commission shall recommend and the council may by ordinance adopt regulations governing the subdivision of land within its jurisdiction. The regulations, in addition to the requirements provided by law for the approval of plats, may provide requirements for the coordinated development of the city, town or village; for the coordination of streets within subdivisions with other existing or planned streets or with other features of the city plan or official map of the city, town or village; for adequate open spaces for traffic, recreation, light and air; and for a distribution of population and traffic; provided that, the city, town or village may only impose requirements for the posting of bonds, letters of credit or escrows for subdivision-related improvements as provided for in subsections 2 to 5 of this section.

These two statutes were harmonized by the decision in *City of Bellefontaine Neighbors v. J.J. Kelley Realty & Building Co.,* 460 S.W.2d 298 (Mo.App.1970). In that case, the court held:

> The specificity of [section 89.410] may be considered to restrict the broad grant of power given by section 445.030 and to establish the procedures for carrying out the regulation of subdivisions authorized by section 445.030. Where the legislature has authorized a municipality to exercise a power and prescribed the manner of its exercise, the right to exercise the power in any other manner is necessarily denied.

*Id.* at 303–04.

Section 89.410.1 requires that regulation of subdivisions be accomplished in municipalities by ordinance. *State of Missouri ex rel. Schaefer v. Cleveland,* 847 S.W.2d 867, 871 (Mo.App.1992). Chapter 66 of the Code of Ordinances of the City of Kansas City, Missouri, contains the rules and regulations regarding the subdivision of land located in the city. Section 66–42 of the code establishes a three-step process for ultimate approval of subdivision plats: (1) preliminary plat phase, (2) final plat phase review before the city plan commission, and (3) final plat phase review before the city council. Each phase has a number of steps within it.

The dispute at issue herein occurred at the preliminary plat phase. The preliminary plat phase is defined as follows:

During the preliminary plat phase, the applicant will hold preapplication conferences with the secretary to the city plan commission, or his designated staff representative, to discuss in general the procedures and requirements for platting, and more specifically the basic plans of the applicant. It is recommended that the applicant's engineer meet with the city engineer, or his designated staff representative, to review the physical features of the development relative to the public improvements. The product of the preapplication conference will allow the applicant to complete a preliminary plat and submit it formally for review by the plats review committee. The plats review committee shall have the authority to approve or disapprove any preliminary plat; provided the preliminary plat must comply with all of the requirements of this chapter. The developer may elect to submit the preliminary plat to the city plan commission and city council. Generally, the election to proceed before the city plan commission and city council is recommended when:

a. The plats review committee disapproves the preliminary plat;

b. The developer is requesting a variance or conditional exception from this chapter; or

c. The development is planned to be platted in two or more phases If the developer elects to proceed to the city plan commission and city council, the plats review committee will review and forward its recommendations to the city plan commission and city council.

Kansas City Code section 66–42. The stated purpose of the preliminary plat is to convey the developer's "ideas and intentions in platting the proposed subdivision." Kansas City Code section 66–43(a).

The developer may also elect to submit his preliminary plat to the city plan commission and the city council for approval. Kansas City Code section 66–43(e). It appears from the testimony at trial that submitting a preliminary plat to the city plan commission is the standard procedure in Kansas City. When the developer elects to proceed before the city plan commission, the plats review committee issues a recommendation as to approval or denial to the city plan commission. Kansas City Code section 66–43(f). There is then to be a public hearing before the city plan commission. *Id.* If the commission approves the preliminary plat, it is submitted to the city council for approval as an ordinance. Kansas City Code section 66–43(g). If the plan commission rejects or withholds approval, the developer may request in writing that the plan be submitted to the city council. *Id.* There is then another public hearing before the city council. *Id.*

When proceeding under the subdivision ordinance, the plan commission and the city council are acting in an administrative capacity and not in a legislative capacity. *State ex rel. Westside Development Co., Inc. v. Weatherby Lake,* 935 S.W.2d 634, 640 (Mo.App.1996). The law does not permit administrative bodies to exercise an arbitrary and subjective authority over the granting or denying of subdivision plats. *Schaefer,* 847 S.W.2d at 873. The exercise of discretion and judgment vested in the administrative body is to determine whether a plan meets the zoning or subdivision requirements. *Id.* It is not a discretion to approve a plan that does not meet the requirements. *Id.* Nor do the statutes and the ordinance grant the commission or the council the authority to deny a subdivision plat that complies with the subdivision ordinance. *Id.* If the

plat complies, then it is the ministerial duty of the commission and the council to approve it, and they have no discretion to deny it. *Id.* The approval of a preliminary plat that meets the subdivision and zoning requirements is a ministerial act, and mandamus is the proper remedy in seeking to review the denial of such a plat. *See Weatherby Lake*, 935 S.W.2d at 640; *State ex rel Menkhus v. City of Pevely*, 865 S.W.2d 871, 874 (Mo.App.1993); *Schaefer*, 847 S.W.2d at 871.

### C. Missouri Administrative Procedure Act

The Missouri Administrative Procedure Act provides for two types of cases: contested cases and non-contested cases. The distinction between these two types of cases is an often-litigated issue. A "contested case" is defined in the MAPA as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Section 536.010(4). The MAPA does not explicitly define a "non-contested case," but it has been defined by this Court as a decision that is not required by law to be determined after a hearing. *State ex rel. Wilson Chevrolet, Inc. v. Wilson*, 332 S.W.2d 867, 870 (Mo. 1960).

■■■■ Contested case review is controlled by sections 536.100 to 536.140. Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law. *Hagely v. Board of Education of the Webster Groves School District*, 841 S.W.2d 663, 668 (Mo. banc 1992). The review of a contested case is a review by the trial court of the record created before the administrative body. Section 536.140.

The trial court's decision upon such review is appealable, but the appellate court also looks back to the record created before the administrative body. *City of Cabool v. Missouri State Board of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985).

■■■■ Non-contested cases do not require formal proceedings or hearings before the administrative body. *Farmer's Bank of Antonia v. Kostman*, 577 S.W.2d 915, 921 (Mo.App.1979). As such, there is no record required for review. *Phipps v. School District of Kansas City*, 645 S.W.2d 91, 94–5 (Mo.App.1982). In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision. *Id.* Under the procedures of section 536.150, the circuit court conducts such a hearing as an original action. *Id* at 96; section 536.150.1.

■■■■ In either a contested or a non-contested case the private litigant is entitled to challenge the governmental agency's decision. The difference is simply that in a contested case the private litigant must try his or her case before the agency, and judicial review is on the record of that administrative trial, whereas in a non-contested case the private litigant tries his or her case to the court. Depending upon the circumstances, this difference may result in procedural advantages or disadvantages to the parties, but in either situation, the litigant is entitled to develop an evidentiary record in one forum or another.

### D. Mandamus

■■■■ The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty that one charged with the duty has refused to perform. *State ex rel. Phillip v. Public School Retirement System*, 364 Mo. 395,

262 S.W.2d 569, 574 (1953). The writ can only be issued to compel a party to act when it was his duty to act without it. *Id.* It confers upon the party against whom it may be issued no new authority, and from its very nature can confer none. *Id.* A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed. He must show himself possessed of a clear and legal right to the remedy. *Id.* Mandamus does not issue except in cases where the ministerial duty sought to be coerced is definite, arising under conditions admitted or proved and imposed by law. *State ex rel. Bunker Resource Recycling and Reclamation, Inc. v. Mehan,* 782 S.W.2d 381, 389 (Mo. banc 1990).

■ If a subdivision plat complies with the requirements of the subdivision statute or ordinance, mandamus may compel approval of the plat. If the plat does not comply, mandamus is unavailable and improper.

## V. Analysis

### A.

In its first point of error, the city alleges that "the trial court erred in granting a writ of mandamus because it exceeded its permissible scope of review by hearing the proceeding de novo in that review of a plat application denial is limited to the information presented to the city council."[2]

The city fails to point to any specific evidence that was admitted in error or to any prejudice resulting from the admission of such evidence. The city makes a singular, non-specific reference to "expert testimony on the compliance of the plat." Other evidence in the record indicates that Mr. Furlong told city staff members that

he would comply with all of their conditions; that city staff members told Mr. Furlong that they would not discuss with him the denial of his preliminary plat "for fear of litigation;" that Mr. Furlong attempted to submit a revised preliminary plat but was not allowed to do so; that Mr. Furlong was subjected to various delays during the process; and that the city was advised that it had no legal basis to deny the preliminary plat.

■ "By both statute and rule, an appellate court is not to reverse a judgment unless it believes the error committed by the trial court against the appellant materially affected the merits of the action." *Lewis v. Wahl,* 842 S.W.2d 82, 84–5 (Mo. banc 1992) (citing section 512.160(2) and Rule 84.13(b)). Merely asserting error without making a showing of how that error was somehow prejudicial is not sufficient for reversal. Nonetheless, there was no error in admitting the evidence.

Neither party contends that the City should have conducted Furlong's preliminary plat hearing as a contested case and we do not address that question. The parties concede that mandamus was the proper procedure to challenge the denial of a preliminary plat. *See Weatherby Lake,* 935 S.W.2d at 640; *Menkhus,* 865 S.W.2d at 874; *Schaefer,* 847 S.W.2d at 871.

■ The standard for admission of evidence in a mandamus proceeding is the same whether at common law or under the MAPA. At common law, it is well established that the ordinary principles relating to admissibility of evidence in civil actions generally are applicable in mandamus proceedings. 55 C.J.S. *Mandamus* § 352 (1998). Any competent evidence tending

---

**2.** The parties do not explain the significance of the fact that the plat has now been approved and the project has been completed. Neither argues that this issue is moot. Nei-

ther explains the consequences of this decision beyond its impact upon the 42 U.S.C. section 1983 claim.

to establish, or in any way affecting, the right of the relator or duty of respondent, and within the allegations of the petition and writ, is admissible. *Id., see also, State ex rel. Rawlings v. Kansas City*, 213 Mo. App. 349, 250 S.W. 927 (1923).

 Under the MAPA, mandamus is generally not available if the proceeding was tried as a "contested case" before an administrative body. *State ex rel. Keeven v. City of Hazelwood*, 585 S.W.2d 557, 560 (Mo.App.1979); *State ex rel. Dodson v. McNeal*, 552 S.W.2d 34, 36 (Mo.App.1977); section 536.150. Section 536.150.1 provides for review of non-contested cases as follows:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, *such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition, or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced,* and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

(emphasis added). The evidentiary standard "as may be properly adduced" is not limited to a review of the administrative record. This is because in proceedings such as the one here, the parties were not afforded the ability to create a record upon which viable review could occur. *See Hagely*, 841 S.W.2d at 668.

In making its argument that the review in the circuit court is limited to the record, the city makes the simple mistake of confusing Furlong's burden of proof with the standard for determining the admissibility of evidence. Although Furlong was required to prove that it presented the city with sufficient evidence to show that it met the requirements for preliminary plat approval, it had the right, before the circuit court, to adduce any evidence relevant to proving such facts.

The driving idea behind administrative law in Missouri is that the citizen is entitled to a fair opportunity to present the facts of his or her case. If this occurs in the context of the procedural formality and protection of a "contested case" before the administrative agency, the review in the courts can be limited to the record. If the citizen is denied this opportunity before the agency, then he or she is entitled to present such evidence as is necessary before the courts to determine the controversy.

The city relies on *Weatherby Lake* as support for a more limited review. Although *Weatherby Lake* correctly notes "the reviewing court is not authorized to

substitute its judgment for the judgment of the administrative body if such findings of fact are supported by competent and substantial evidence," nothing in *Weatherby Lake* precludes the introduction of evidence to establish what actually occurred in the administrative process.

### B.

In its second point of error, the city argues that "the trial court erred in granting a writ of mandamus because there was insufficient evidence to show that the city council's decision was arbitrary or capricious in that the information the city council reviewed was sufficient to support the city council's decision to deny the preliminary plat application."

The trial court found that the city's decision was "unlawful, unreasonable, arbitrary, and capricious in that the [city] failed to perform its ministerial duty, given that this court finds that [Furlong] met the subdivision regulations and the preliminary plat is consistent with the zoning ordinance." The standard of review for a bench-tried case is well-established. An appellate court must sustain the decree or judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Despite the language of its point relied on, the city apparently only challenges the sufficiency of Furlong's evidence regarding four conditions for approval. First, the city argues that the project had a "potential impact on traffic." The record reflects, however, that the city council required Furlong to conduct a traffic study

to examine the impact of the proposed development based on Furlong's intended uses of the land. Furlong hired a traffic-engineering firm to conduct such a study. The city council questioned the findings of the initial study, and Furlong then asked the traffic engineers to perform a more comprehensive study. The studies ultimately concluded that the proposed development would have little or no impact on existing traffic patterns. There was substantial evidence for the trial court to find that the proposed development would not have a "potential impact on traffic."

The city also argues that "a reasonable person could doubt" that Furlong's plat complied with the "stacking" requirements for cars at a car wash.[3] However, at trial, the city planner and Furlong's engineer testified that the stacking requirement had been satisfied. Moreover, the staff report recommending approval of Furlong's preliminary plat indicates that the stacking requirement was satisfied. There was substantial evidence for the trial court to find that Furlong complied with section 80–140(b)(1)d.4 of the zoning ordinance.

The city argues that Furlong did not comply with the requirement that the ratio of the lot depth to width generally not exceed three to one when subdividing large parcels. Under one method of measurement, lot 2 as shown on the preliminary plat before the city council had a ratio of 3.07 to 1. Other methods of measurement, such as taking the average lot depth as compared to average lot width, would generate a ratio well within the three to one requirement. Regardless, there is substantial evidence that this issue was easily correctable through a simple revision of one of the lot boundary lines.

---

3. Stacking refers to the space occupied by a motor vehicle waiting to enter a car wash bay.

In fact, Furlong made such a revision and attempted to submit that revised preliminary plat to the city, but was not allowed to do so. There was also evidence at trial that the three to one ratio requirement was not even applicable to Furlong's preliminary plat because the ratio was intended to apply only to the subdivision of "large tracts or parcels." There was testimony at trial that this provision typically was only applied to tracts of ten acres or more, whereas Furlong's parcel was only 2.76 acres. There was substantial evidence for the trial court to find that Furlong's preliminary plat complied with the requirement that the lot depth not exceed three times the lot width.

Finally, the city argues that Furlong's preliminary plat did not comply with one of the proposed conditions recommended by the city staff because it did not eliminate the easterly drive on proposed lot 3. However, there was evidence that the easterly drive had already been approved by Kansas City parks and recreation such that the city staff could not properly require its elimination. There was also evidence that Furlong had agreed to satisfy the conditions as proposed by the city staff and was specifically willing to address the issues surrounding the easterly drive on proposed lot 3. There was substantial evidence for the trial court to find that Furlong's preliminary plat complied, or could easily comply through simple revision, with all of city staff's conditions for approval.

It also appears that the city's attorney advised, in closed session, that the city could not legally deny Furlong's preliminary plat. A member of the city council indicated that, although he thought Furlong's plan was "terrible," he argued in favor of Furlong's preliminary plat to the other members of the city council based on the advice of the city attorney.

There was substantial evidence for the trial court to find that the city's decision to deny approval of Furlong's preliminary plat was unlawful, unreasonable, arbitrary, and capricious.

## C.

In its third point of error, the city argues that "the trial court's grant of judgment on the substantive due process claim was clearly erroneous because there was no substantial evidence to support a finding that the city acted in a clearly irrational manner when its city council denied Furlong's preliminary plat application in that the trial court erroneously declared the law and in that the plat did not comply with the city's subdivision ordinance and this was a rational basis for the city's denial and in that Furlong used the process available and therefore was not denied due process."

Furlong alleged that the city violated 42 U.S.C. § 1983 in denying its preliminary plat in contravention of its ministerial duty to approve it upon compliance with the subdivision regulations. Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the pur-

poses of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

 There are two elements that must be established to prevail on a claim under section 1983. First, a claimant must establish "a protected property interest to which the Fourteenth Amendment's due process protection applies." *Bituminous Materials, Inc. v. Rice County, Minn.,* 126 F.3d 1068, 1070 (8th Cir.1997). A claimant must also establish that the governmental action was "truly irrational." *Id.* The truly irrational standard has been further defined as "something more than … arbitrary, capricious, or in violation of state law." *Chesterfield Development Corp. v. City of Chesterfield,* 963 F.2d 1102, 1104 (8th Cir.1992); *Frison v. City of Pagedale,* 897 S.W.2d 129, 132 (Mo.App.1995). As stated previously, the standard of review for a bench-tried case in Missouri is well-established. An appellate court must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy,* 536 S.W.2d at 32.

The city apparently does not dispute that Furlong had a protected property interest, and asserts only that the city's conduct in denying Furlong's preliminary plat was *not truly irrational.* The city argues that because it believed that Furlong's preliminary plat did not comply with the subdivision regulations, its conduct in denying the preliminary plat could not technically be considered irrational. In part V.B of this opinion, the city asserted four bases for its belief that Furlong's preliminary plat did not comply with the subdivision regulations. As discussed in that part, there was substantial evidence for the trial court to find not only that Fur-

long's plat did comply with the subdivision regulations as to each of the city's four arguments but that there was no rational basis for any of those arguments.

The city also appears to argue that there could be no violation of section 1983 because the trial court ultimately remedied the improper denial of Furlong's preliminary plat. The fact that a trial court remedied the city's wrongful and irrational conduct has no bearing on whether that conduct was violative of section 1983.

 As previously stated, 42 U.S.C. section 1983 liability requires evidence that exceeds an arbitrary and capricious standard and rises to the "truly irrational" level. Unfortunately, there was sufficient evidence on which the trial court could determine that the city's conduct was truly irrational.

The city plan commission ignored the advice of the plats review committee recommending approval and denied Furlong's preliminary plat. Furlong's attempts to learn the reasons for denial were rebuffed and Furlong was never afforded any opportunity to amend or correct the preliminary plat.

Once Furlong requested that the preliminary plat be brought before the city council, the city council subjected Furlong to numerous delays. On March 1, 2000, the P & Z committee of the city council held a public meeting to determine the fate of Furlong's preliminary plat. No vote was taken and the issue was continued until March 8, 2000. During the March 8, 2000, meeting no vote was taken, the issue was continued for one week, and the committee ordered Furlong to undertake a traffic impact study. During the March 15, 2000, meeting the committee requested that a more detailed traffic study be performed, no vote was taken, and the issue was continued for two weeks. Finally, on March

29, 2000, after completing two waves of a traffic impact study finding that the proposed development would have little or no impact on existing traffic conditions,[4] the committee again failed to vote on Furlong's preliminary plat, instead voting it "off the docket," where it could be held in legislative limbo for several months with no final decision. Ultimately, the preliminary plat was presented to the full city council for a final vote on May 4, 2000.

The city's attorney advised, in closed session, that the city could not legally deny Furlong's preliminary plat. A member of the city council indicated that, although he thought Furlong's plan was "terrible," he argued in favor of Furlong's preliminary plat to the other members of the city council based on the advice of that city attorney. Nonetheless, the city council voted to deny the preliminary plat application.

In the ten years leading up to and including Furlong's plat application, there were 197 plat applications submitted to the city for review. Of those, 196 were approved, typically within one week of submission. Only Furlong's preliminary plat was denied during that ten-year time period. Such a deviation both from the standard treatment of preliminary plats over a ten-year period and from the advice of staff and counsel leaves no question as to the sufficiency of evidence on which the trial court based its decision.

The Court's role is not to weigh the evidence, but only to review the decision for sufficiency of evidence. *See Murphy*, 536 S.W.2d at 32. All plat denial cases do not give rise to an action for violation of section 1983. *Bituminous Materials*, 126 F.3d at 1070.

Mere delay or mistaken application of the law is not alone sufficient to meet the "truly irrational" standard. In dicta, the Eighth Circuit has even suggested that bad faith enforcement of an invalid law would not be sufficient to state a claim. *Id.*, *Chesterfield Development*, 963 F.2d at 1105.

■ The facts of this case go beyond mistaken, arbitrary, or capricious application of the law. It is clear from the record that all or nearly all of the members of the city council believed that Furlong's proposed project would be bad for this area of Kansas City. To this extent, they were acting in good faith and with the best intentions of serving those who elected them. However, it is equally clear that under the existing and valid ordinances of Kansas City and the established law of this State that Furlong was entitled to have its preliminary plat approved. Further, there was evidence from which the trial court could find that, despite the recommendations of staff and legal counsel, and ultimately the arguments of a fellow city council member, the city council intentionally delayed and denied Furlong its property rights in disregard of the law. When government acts with intentional disregard of its own valid law, knowing that its actions deprive individuals of their property rights, such action is "truly irrational."

The overall course of conduct that the city undertook as it reviewed and ultimately denied Furlong's preliminary plat was substantial evidence for the trial court to find that the city acted in a "truly irrational" manner.

## D.

In its fourth point of error, the city argues that "the trial court's award of damages was clearly erroneous because there was no substantial evidence to sup-

4. The city's own engineer reviewed the traffic impact study and agreed with the findings.

port a finding that the city proximately caused the damages awarded to Furlong."

■ Causation is an essential element of a section 1983 action. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). In order to award damages, the trial court had to determine that the city's conduct in denying Furlong's preliminary plat proximately caused the economic damage for which Furlong seeks to recover. As stated previously, an appellate court must sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy,* 536 S.W.2d at 32.

■ There was substantial evidence in the trial court to support a finding of proximate cause. Furlong presented John Ward, an economic expert, to establish its damages. Mr. Ward testified that the earliest date Furlong's plat could have been approved was March 2, 2000, the date of the first P & Z committee meeting. The trial court ordered the city to approve Furlong's preliminary plat on November 29, 2000. The plat was not finally approved until the city complied with the order of the trial court on December 14, 2000. This constitutes a delay of 287 days. Mr. Ward testified that the total commercial economic damages suffered by Furlong as a result of the denial of the preliminary plat and the resulting 287–day delay in development amounted to $173,071.00. This figure did not include a $50,000.00 loan that Mr. Furlong took from his retirement account and infused into the company. The figure also omitted the costs of hydraseeding the property to prevent erosion and runoff ($1,300.00) and the loan fees incurred as the terms of the project were continually revised based on the city's conduct ($500.00). The trial court appears to have accepted Mr. Ward's dam-

age calculations as well as the testimony as to the retirement account loan, the cost of hyrdraseeding, and the loan fees. These figures total the $224,871.00 that the trial court awarded. The city does not object to the amount of the damages stated by Mr. Ward or the methodology he used in calculating damages.

■ The cost of hydraseeding was caused by the delay because Furlong incurred the expense of maintaining property that would have been sold but for the delay in approving Furlong's preliminary plat. Likewise, the loan fees were directly attributable to the delay as the loan terms had to be revised as the city continued to prolong the process and ultimately denied Furlong's preliminary plat. The $50,000.00 loan Mr. Furlong took from his retirement account, however, is not allowable as delay damages. There is no evidence that the retirement account loan funds were used to pay expenses that were not already accounted for in Mr. Ward's calculations or were attributable to the delay.

The city makes two arguments that Furlong's damages were not proximately caused by the city's conduct in denying Furlong's preliminary plat. First, the city asserts that Furlong should have sought conditional building permits while the plat was being considered or while the litigation was pending. The city argues that any delay in construction on the site could have been avoided had Furlong sought such conditional permits. The city fails to reconcile its argument with the fact that the contracts that Furlong had with both Wendy's and Sonic were conditioned on the land first being properly and finally platted and subdivided. Moreover, the law simply does not require a party to accept the risk of going forward with construction of multi-million dollar facilities on the basis of conditional building permits on land that

has not been finally platted and is the subject of ongoing litigation.

The city also argues that Furlong caused the delay by seeking de novo review of the city council's decision rather than proceeding on the record made before the city council. As already established, review de novo was the proper procedure in this case. Furlong cannot be expected to sacrifice its right to proper review for the sake of expediency.

There was substantial evidence for the trial court to find that $174,871.00 of Furlong's damages were proximately caused by the City's conduct in denying the preliminary plat.[5]

## VI. Conclusion

The judgment of the trial court as to actual damages is reduced to a sum of $174,871.00, and as modified the judgment is affirmed.

All concur.

---

5. The city apparently does not contest the award or amount of attorney's fees.