

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| CLARKSBORO, LLC,<br>and WMAC 2013, LLC, | ) | No. ED111190 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| | ) | 22SL-CC02555 |
| vs. | ) | |
| | ) | |
| CITY OF OVERLAND,<br>MISSOURI, | ) | Honorable Nancy W. McLaughlin |
| | ) | |
| Respondent. | ) | FILED:  October 10, 2023 |

OPINION

Introduction

Clarksboro, LLC ("Clarksboro") and WMAC 2013, LLC ("WMAC") appeal the grant of

summary judgment in favor of the City of Overland, Missouri ("the City") on their petition for

injunctive and declaratory relief to prevent the City from demolishing a building located at 2626

Woodson, St. Louis, Missouri ("the Property") for code violations. In Point I, Clarksboro and

WMAC argue the circuit court erred in entering summary judgment because the City accepted

that the code violations were abated pursuant to a plea agreement between the City and WMAC

for municipal court citations. In Point II, they argue the order to demolish the building was

barred by *res judicata* and/or collateral estoppel due to the plea agreement. We affirm the

summary judgment of the circuit court.

*Code Violations and Administrative Proceedings*

John Ramsey is the president of Clarksboro and WMAC. WMAC previously owned the Property, which was conveyed to Clarksboro by special warranty deed on March 2, 2020.

On May 26, 2021, the City's Office of the Building Commissioner ("the Building Commissioner") sent a Notice and Order concerning the Property to Clarksboro and WMAC by certified first-class mail. The Notice and Order alerted them that the Property was "a 'dangerous building' 'unfit for human habitation' and a 'public nuisance' within the meaning of Chapters 510 and 515 of the Municipal Code of the City." As a result, the owner was required to "vacate and repair or vacate and demolish" the Property. The Notice and Order further stated that any "repair or act" in response to the Notice and Order must be commenced within 30 days. The Notice and Letter listed the findings leading to its issuance, as documented in violation notices dating back to the 1980s.

On August 30, 2021, the Building Commissioner again sent substantially the same Notice and Order because of a change of address of Clarksboro's registered agent. It was mailed by certified first-class mail to Clarksboro's registered agent at his new address and to WMAC's president.

On October 1, 2021, after decades of unresolved problems with the Property, the City issued a Notice of Hearing ("the Hearing") for October 20, 2021. The purpose of the Hearing was to determine if the Property should be condemned. The Hearing was also an opportunity for

---

[1] Only those material facts set forth in the parties' statements of facts may be considered in determining whether summary judgment is appropriate. *Aziz v. Tsevis*, 565 S.W.3d 738, 744 (Mo. App. E.D. 2018); *see also Green v. Fotoohighiam*, 606 S.W.3d 113, 117-18 (Mo. banc 2020). Accordingly, we disregard any references to facts outside of the summary judgment record. *Fotoohighiam*, 606 S.W.3d at 117.

Clarksboro and WMAC to show cause why the Property "should not be ordered repaired, vacated and repaired, or vacated and demolished." The Notice of Hearing informed Clarksboro and WMAC that they would have "an opportunity to speak" and "offer any evidence" at the Hearing. A copy of the Notice of Hearing was sent by certified first-class mail to Clarksboro's registered agent and WMAC's president on October 1, 2021. It was delivered to Clarksboro on October 4, 2021, and to WMAC on October 6, 2021. The City also published a Notice of Hearing on October 6 and October 13, 2021, which stated Clarksboro and WMAC or other interested parties "may appear and present evidence."

On October 20, 2021, the Hearing before the Commissioner of Building Hearings (the "Commissioner") took place as scheduled. Clarksboro and WMAC did not appear. A certified court reporter recorded the Hearing and prepared a transcript. The City presented two sworn witnesses and ten exhibits. The City's witnesses detailed the history of the proceedings leading up to the Hearing and the inspections and violations that resulted in the May 26, 2021 Notice and Order.

On December 15, 2021, the Commissioner issued his Findings, Order, and Notice (the "Administrative Order"). Based on the evidence presented at the Hearing, the Commissioner concluded that the building was "dangerous," "detrimental to the health, safety, and welfare of the residents of the City, within the meaning of Chapter 510 of the City's municipal code," and constituted a "public nuisance." He ordered the owners to "vacate and repair" or "vacate, demolish, and remove" the Property within 30 days, or the Commissioner would order the Property demolished and removed and the assessment of a special tax.

The Administrative Order also set forth the "right of appeal," which "must be instituted in the Circuit Court of St. Louis County within thirty (30) days after the mailing or delivery of

this notice of the determination and order of the Commissioner of Building Hearings." On December 17, 2021, the Administrative Order was mailed to Clarksboro and WMAC by both regular and certified mail. On December 21, 2021, the Administrative Order was delivered to WMAC's president. Neither Clarksboro nor WMAC filed a petition for judicial review of the Administrative Order or took any other action concerning the Administrative Order before the expiration of the 30-day deadline on January 20, 2022.

*Municipal Court Citation and Proceedings*

On July 29, 2019, the City's Division of Code Enforcement issued a municipal court citation ("the Citation") to WMAC charging that, as of that date, the Property was a dangerous building in violation of Section 103.1.3 of the International Property Maintenance Code, as adopted by the City.

On October 14, 2021, the City's Prosecuting Attorney provided WMAC with a Recommendation and Plea Agreement (the "Plea Agreement") regarding the Citation and two unrelated citations of other properties. The Plea Agreement provided that WMAC would plead guilty and pay a fine of $150 on each citation. WMAC's attorney and president signed the Plea Agreement on October 19, 2021. The circuit court issued receipts for payment of the fines, totaling $450, on October 25, 2021. The Plea Agreement did not make any reference to the code violations or the administrative proceedings before the Commissioner, or any action taken by the City under Chapter 510.

*Circuit Court Proceedings*

On May 12, 2022, almost four months after the expiration of the 30-day deadline for appeal from the Commissioner's Administrative Order, Clarksboro and WMAC filed their Petition in the underlying action, seeking injunctive and declaratory relief from the

Administrative Order. They also filed a Motion for Temporary Restraining Order and Preliminary Injunction to prevent the imminent condemnation, demolition, and removal of the Property.

On June 16, 2022, the City served its First Request for Production of Documents on both Clarksboro and WMAC. Clarksboro and WMAC failed to object, or to otherwise respond, to the City's discovery requests. Nor did they serve any written discovery requests, notices of deposition, or any other discovery of their own.

On June 30, 2022, the City filed its First Amended Answer pointing out Clarksboro and WMAC failed to timely file a petition for judicial review under Sections 536.100 to 536.140 within 30 days of the mailing of the Administrative Order under Section 536.110.[2] The City argued that failure deprived the circuit court "of jurisdiction and/or statutory authority to review the Administrative Order." The City also stated that review "by injunction and/or declaratory judgment was not available as a matter of law in a contested case," and that the Petition was "an improper collateral attack on the Administrative Order." The City further stated that "[a]ny evidence concerning the condition of the Property should have been presented by [Clarksboro and WMAC] at the hearing of October 20, 2021, and may not now be properly offered or considered in this action."

On August 8, 2022, the City filed its motion for summary judgment, along with its suggestions in support, in which it made essentially the same arguments. The City also filed its statement of uncontroverted material facts and exhibits, which consisted of the complete record of the Hearing before the Commissioner, including the transcript and all exhibits offered and

---

[2] Unless otherwise indicated, all statutory references are to RSMo (2000) as amended.

admitted in evidence. Clarksboro and WMAC filed a response to the City's summary judgment motion but did not support the response with any affidavit, deposition, or other discovery.[3]

On September 30, 2022, the circuit court held a hearing on the motion. On October 10, 2022, the circuit court granted summary judgment in favor of the City and against Clarksboro and WMAC. The circuit court did not specify the basis on which it granted the motion. This appeal follows.

<u>Standard of Review</u>

Our review of the circuit court's grant of summary judgment is *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). In determining whether summary judgment was proper, we apply the same criteria as the circuit court. *Id*. We will affirm the judgment of the circuit court if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id*.; Rule 74.04(c)(6). We afford the non-moving party the benefit of all reasonable inferences from the record. *Fotoohighiam*, 606 S.W.3d at 116.

Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id*. However, the non-moving party "must support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial." *Id*.; Rule 74.04(c)(2),

---

[3] In their appellate brief, Clarksboro and WMAC repeatedly refer to an engineering report purportedly attesting to the Property's structural soundness. That report was not part of the summary judgment record before the circuit court, Clarksboro and WMAC concede as much, and we do not consider it. *See Green v. Fotoohighiam*, 606 S.W.3d 113, 117 (Mo. banc 2020). We note also that Clarksboro and WMAC moved to supplement the record on appeal with an affidavit of John Ramsey and exhibits referencing the engineering report. This Court denied the motion because the record on appeal cannot deviate from the record before the circuit court. *Horobec v. Mueller*, 628 S.W.2d 942, 944 (Mo.App.E.D.1982). Parties may not supplement the record on appeal with documents never presented to, or considered by, the circuit court. *Carondelet Savings and Loan Ass'n v. Boyer*, 595 S.W.2d 744, 746–747 (Mo.App.E.D.1980).

6

(c)(4). The non-moving party may not rest upon the mere allegations or denials of his pleading, but his response must be supported by specific references to the record showing that there is a genuine issue for trial. *Fotoohighiam*, 606 S.W.3d at 117; Rule 74.04(c)(2). Where denials are not properly supported under Rule 74.04(c)(2) or (c)(4), they are deemed admitted. *Fotoohighiam*, 606 S.W.3d at 116. Finally, a defending party may establish a right to judgment as a matter of law by showing:

> (1) [F]acts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (emphasis omitted). "We will affirm the trial court's summary judgment on any ground supported by the record, whether relied upon by the trial court or not." *Bray v. Wells Fargo Home Mortgage, Inc.*, 654 S.W.3d 732, 739 (Mo. App. E.D. 2022) (quoting *Cass Cnty. v. City of Lee's Summit*, 638 S.W.3d 560, 566 (Mo. App. W.D. 2021)).

Discussion

Clarksboro and WMAC raise two points on appeal. In Point I, they argue the circuit court erred in entering summary judgment in favor of the City because the City accepted that the municipal code violations were abated pursuant to the Plea Agreement. In Point II, they argue the circuit court erred because the Hearing before the Commissioner and the Administrative Order were barred by *res judicata* and/or collateral estoppel due to the Plea Agreement.

*Waiver*

As an initial matter, Clarksboro and WMAC did not appear at the Hearing before the Commissioner. They therefore waived their rights to present any abatement, *res judicata*, or

7

collateral estoppel arguments, and to challenge the City's evidence and present their own evidence before the Commissioner. Additionally, by failing to plead or argue these issues before the Commissioner, Clarksboro and WMAC waived them on appeal. The appellate court "will generally not convict a lower court of error on an issue that was not put before it to decide." *Smith v. Shaw*, 159 S.W.3d 830, 835 (Mo. banc 2005). By failing to raise an argument in the lower court, a party waives the issue on appeal. *Id*.

*Petition for Judicial Review*

Setting aside the waiver, we cannot proceed to the merits of this appeal without also addressing Clarksboro's and WMAC's failure to file a petition for judicial review within 30 days of the mailing or delivery of the Administrative Order, as required by Section 536.110.1.

Enforcement of an ordinance by a municipality or city is administrative and reviewable under the Missouri Administrative Procedure Act ("Act"), Chapter 536. *Wrenn v. City of Kansas City*, 908 S.W.2d 747, 749 (Mo. App. W.D.1995). If the decision occurs in the context of a contested case, it is subject to judicial review under Section 536.100. *Wrenn*, 908 S.W.2d at 749.

Section 536.010(4) of the Act defines a contested case as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." A contested case is one in which a proceeding is contested because of some requirement by statute, municipal charter, ordinance, or constitutional provision for a hearing of which a record must be made unless waived. *Wrenn*, 908 S.W.2d at 750. "Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law." *Furlong Companies, Inc. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006). "The review of a contested case is a review by the trial court

8

of the record created before the administrative body." *Id*. "The trial court's decision upon such review is appealable, but the appellate court also looks back to the record created before the administrative body." *Id*.

The case before us is a contested case. At the hearing on the City's summary judgment motion, counsel for Clarksboro and WMAC conceded as much. Also, as required by the Act, a hearing was held to determine Clarksboro's and WMAC's rights under the City's municipal ordinances, a proper record was maintained, procedural formalities were observed, and the Administrative Order contained findings of fact and conclusions of law. *See Gosal v. City of Sedalia*, 291 S.W.3d 822, 826 (Mo. App. W.D. 2009); *Hagely v. Bd. of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663, 668 (Mo. banc 1992).

Because the proceeding before the Commissioner was a contested case, the City's decision was subject to judicial review pursuant to Section 536.110. Subsection 1 of that section provides, "Proceedings for review may be instituted by filing a petition in the circuit court of the county of proper venue within thirty days after the mailing or delivery of the notice of the agency's final decision." Section 536.110.1; *see also Williams v. City of Kinloch*, 657 S.W.3d 236, 241-242 (Mo. App. E.D. 2022).

As Clarksboro and WMAC admit on appeal, they failed to file their petition for judicial review in the circuit court within 30 days. Their failure to timely file a petition for judicial review deprived the circuit court of any statutory authority to review the Administrative Order and is "fatal to [their] pursuit of judicial review." *Williams*, 657 S.W.3d at 242.

*Injunctive and Declaratory Relief*

9

Even if Clarksboro and WMAC had timely filed their petition for judicial review, their Petition for declaratory and injunctive relief would fail because the exclusive means of obtaining judicial review of the Administrative Order is by filing a petition for judicial review.

Clarksboro and WMAC cite Section 536.150 as support for their Petition for injunctive relief. But that section provides for judicial review of administrative decisions only in certain circumstances not present here. For example, review pursuant to Section 536.150 is available only if a proper record of the administrative proceeding was not maintained. *See* Section 67.430.1 (requiring municipal ordinances shall provide for appeal from the determination of the building commissioner to the circuit court if a proper record is maintained of the hearing; "otherwise, the appeal shall be made pursuant to the procedures provided by section 536.150."). Section 536.150 is not applicable here because a proper record, including a transcript, of the Hearing was maintained.

Also, administrative decisions "may be reviewed by suit for injunction" under Section 536.150 only when "there is no other provision for judicial inquiry into or review of such decision." Section 536.150.1. Here, there is other provision for judicial review of the Administrative Order in Section 536.110, which provides for judicial review pursuant to a timely filed petition.

Finally, "nothing" in Section 536.150 "shall apply to contested cases reviewable pursuant to sections 536.100 to 536.140." Section 536.150.2. Because this is a contested case, the exclusive means of obtaining judicial review of the Administrative Order was by filing a petition for judicial review pursuant to Section 536.110.

As we already have concluded, Clarksboro and WMAC failed to file a timely petition for judicial review of the Administrative Order. They may not fail to do so and then seek injunctive

10

relief from the Administrative Order. *Wrenn*, 908 S.W.2d at 751. The circuit court thus lacked statutory authority to consider their Petition for declaratory and injunctive relief.

*Res Judicata and/or Collateral Estoppel*

Finally, even if not otherwise forfeited, Clarksboro's and WMAC's argument that the City has "taken inconsistent positions" with inconsistent results and "two different and inconsistent findings" is without merit. Chapter 510 of the City's municipal code provides for remedies "quite other and different from" proceedings on a citation in municipal court to impose a "penalty" for violation of the building code adopted by city ordinance. *City of Independence v. Richards*, 659 S.W.2d 795, 797 (Mo. App. W.D. 1983). In other words, the "remedy" sought by the Citation in the municipal court proceeding "is not an abatement of a nuisance by repair or destruction, but a penalty for infraction of an ordinance." *Id*. The only issue determined by the Plea Agreement in the municipal court was that WMAC pleaded guilty to the Citation of July 29, 2019, and two other, unrelated citations.

Conversely, the issue before the Commissioner and addressed by the Administrative Order was whether, as of the Hearing date of October 20, 2021, more than two years after the Citation of July 29, 2019, the Property was a dangerous building and a public nuisance within the meaning of Chapters 510 and 515 of the City's municipal code. Once the Commissioner found in the affirmative, he was tasked with determining whether the Property should be ordered repaired, vacated and repaired, or vacated and demolished. This question of whether the Property was compliant with the City's building code in October 2021 was never addressed in the municipal court, nor did the municipal court have authority to order the Property repaired or vacated and demolished.

Therefore, the Plea Agreement did not render the Administrative Order barred by *res judicata* or collateral estoppel.

Conclusion

Clarksboro and WMAC waived their claims of abatement, *res judicata*, and collateral estoppel by failing to appear at the Hearing. They also failed to file a petition for judicial review in this contested case before the 30-day deadline, and the circuit court therefore lacked authority to review the Administrative Order. Moreover, the injunctive and declaratory relief sought by Clarksboro and WMAC was not available as a matter of law pursuant to Section 536.150. Finally, their claim of *res judicata* and collateral estoppel fails on its merits because the Plea Agreement in municipal court was separate and apart from the code violations and administrative proceedings before the Commissioner pursuant to Chapter 510.

For all of these reasons, the City was entitled to judgment as a matter of law, and the circuit court did not err in granting the City's motion for summary judgment. Points I and II are denied. The judgment is affirmed.

_____
Cristian M. Stevens, J.

Robert M. Clayton III, Presiding Judge and
Philip M. Hess, Judge: concur.

12