**STATE of Missouri, ex rel., WESTSIDE DEVELOPMENT CO., INC., and Dr. Robert Crist, Appellants,**

v.

**WEATHERBY LAKE, Missouri, et al., Respondents.**

**No. WD 51846.**

Missouri Court of Appeals, Western District.

Oct. 8, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 1996.

Application to Transfer Denied Jan. 21, 1997.

Michael T. White, Aaron G. March, Lisa A. Weixelman, Mark F. Brady, Polsinelli, White, Vardeman & Shalton, P.C., Kansas City, for appellants.

Lawrence J. Zimmerman, W. Anthony Curp, Jeffrey L. Wagoner, King Hershey Koch & Stone, Kansas City, for respondents.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

Westside Development Company, Inc. ("Westside") and Dr. Robert Crist (hereafter collectively "Developers") appeal the trial court's order denying Developers' request for a writ of mandamus to compel the City of Weatherby Lake to approve a preliminary plat. On appeal, Developers assert that the trial court erred in: 1) not issuing its order in mandamus because the preliminary plat complied with all the prerequisites necessary for approval; 2) determining that Westside was estopped from proposing a cul–de–sac for Roberts Road because the evidence failed to establish inconsistent conduct, reliance or injury; and 3) determining that Westside lacked standing to assert its claim for mandamus.

The judgment is affirmed.

## UNDERLYING FACTS

The City of Weatherby Lake (City) was incorporated in August of 1959. In 1960, a map consisting of recorded plats and surveys was adopted as the official plat of the City. This original plat was used as a planning and development aid to the City. As subdivisions were approved, their plats and maps were added to the original plat and used by the City in the planning of its development.

Dr. Crist owns 39.2 acres of undeveloped land in the City of Weatherby Lake. This undeveloped land (the property) is located between the Crist Haven subdivision which lies to the south and the Weatherby West subdivision, to the north. Both of these subdivisions constitute properties previously owned and developed by Dr. Crist. All three areas have been part of a plan of development to be accomplished in three phases. When Dr. Crist began the process in 1974, all three phases were presented on a preliminary plat. The first phase, known as Crist Haven, was developed in 1974. The second phase, Weatherby West, was developed in 1988.

In May of 1993, Dean Clegg, president of Westside, informally presented a plan to the City of Weatherby Lake Planning Commission proposing the development of the third phase to be known as Weatherby Lake Estates. On July 6, 1993, representatives of Developers met with the Mayor and Chairman of the Planning Commission to review a proposed preliminary plat and to discuss the procedures and details necessary to comply with the City's subdivision regulations for preliminary plat approval.

On August 13, 1993, Developers filed an application for approval of a preliminary plat. The plat was reviewed by the city engineer.

He raised concerns over the available line of sight with respect to Westside Drive and the need to widen Westside Drive. Construction plans were filed on September 16, 1993. The construction plans were revised numerous times to address issues the city engineer raised.

The Commission held a series of three hearings on the preliminary plat. During the first hearing, Developers had requested a variance seeking to avoid making the required improvements to Westside Drive which abuts the new development. The Commission voted to deny the request for a variance. At the conclusion of the third public hearing, the Commission voted to recommend denial of the application for approval of the preliminary plat. The Commission recommended denial because the plat failed to: 1) indicate dedication of park land; 2) satisfy applicable standards for line of sight on Westside Drive; 3) provide for the continuation of Roberts Road; and 4) provide for the widening or realignment of the narrow portion of Westside Drive.

The Board of Alderman conducted a public hearing concerning the preliminary plat and the construction plans. During the hearing, Developers presented information related to the line of sight issue that had not been presented to the planning commission. Also noted at the hearing was the repeal of the provision requiring the dedication of park land. The Board of Aldermen then adopted the Commission's recommendation to reject the plat, relying on the second, third, and fourth reasons cited by the Commission.

Upon denial of the preliminary plat, Developers filed suit against the City seeking a writ of mandamus to compel the City to approve the preliminary plat. A trial was conducted to determine whether the City's denial of the preliminary plat, based on the three reasons provided, was supported by substantial and competent evidence. The trial court then determined that Developers lacked standing to assert mandamus and that both parties were estopped from asserting that the City cannot require Roberts Road to be a continuous street. The trial court then found that because the preliminary plat did not satisfy the subdivision regulations, mandamus did not lie. The trial court dismissed the preliminary writ of mandamus and entered judgment for the City.

## I. Westside Standing

■ Appellant Developers claim the trial court erred in determining that Developers lacked standing to assert its claim in mandamus. At the time Westside filed suit, it did not have an ownership interest in the land or a written contract to purchase the land from Dr. Crist.

■ The test for standing is essentially the same in either a legislative zoning decision or an administrative decision. *Palmer v. St. Louis County*, 591 S.W.2d 39 (Mo.App. 1979). In either, the decision must act more distinctly and directly on an interest of the person claiming standing than it does as an effect on the general public.

The court in *Palmer* articulated the rule and the rationale for the rule when determining standing of a party litigant to contest a zoning decision. The court said:

> In the case of an Administrative decision the party must be aggrieved (Sec. 89.110 RSMo 1978); in the case of a legislative determination there must be a justiciable controversy. (Citation omitted) In either case the party seeking relief must demonstrate a specific and legally cognizable interest in the subject or legislative decision and that he has been directly and substantively affected thereby. (Citations omitted). While the protectible interest required for standing may be less than a legal wrong, the decision must act directly on an interest of the person who claims standing distinctly from the effect on the general public. (Citation omitted). It is the essence of zoning procedure that the general interests of the public are to be protected by the legislative body or agency. That obligation and authority has been granted to them by the state legislature, and the requirement of standing subserves the legislative purpose in insulating their actions from capricious attack. (Citation omitted). To permit each member of the public who disagrees with such a decision to seek judicial review would effective-

ly destroy the legislative and administrative zoning structure.

*Id.*

In a case determined by the Missouri Supreme Court, the plaintiff in the action was the developer who did not own the property, was not acting as the owner's agent, and whose contractual right in the property had expired. *Waites v. St. Louis County,* 484 S.W.2d 245 (Mo. banc 1972). The court nonetheless, found that the developer had sufficient standing to pursue its cause. *Id.* at 247. This was due in part because the developer was acting for its own self-interest and that of the owner in that it was in their mutual interest to have the property rezoned. The court stated that once notice is given and hearings are held, the action taken by the legislative body does not necessarily depend on the identity of the owner as much as it does the situation of the property and the facts and circumstances of the case. *Id.* at 248.

In another case, the Eastern District found that the applicant for a special use permit had standing despite its lack of contractual right to purchase the property. *State ex rel. Presbyterian Church v. City of Washington,* 911 S.W.2d 697, 700 (Mo.App.1995). The city's regulations did not require an applicant to own the property, and the court declined to impose such a requirement to have the decision reviewed. *Id.* Similarly, the City of Weatherby Lake does not require that the owner of the property make application but specifically allows a non-owner to make application, so long as the owner consents. Mr. Crist gave his consent for Westside to seek approval of the preliminary plat. Westside had sufficient standing to pursue this cause of action.

## II. Equitable Estoppel

 The trial court found that Dr. Crist is estopped from asserting that Weatherby Lake cannot require the continuation of Roberts Road throughout all three subdivisions. Westside claims the trial court erred in this determination because the evidence failed to establish that Dr. Crist's proposal to retain a permanent cul–de–sac on Roberts Road was inconsistent with his 1974 proposal to extend Roberts Road through the subdivision, that the City relied on Dr. Crist's 1974 representation, or that injury would inure to the City if Dr. Crist's proposal to build the cul–de–sac conflicts with the 1974 representation and if he were permitted to proceed with it.

 The doctrine of equitable estoppel seeks to foreclose a party from denying his own expressed or implied admission that has been accepted and relied upon by another in good faith and in pursuit of its purpose. *Lake St. Louis Community Assoc. v. Ravenwood Properties, Ltd.,* 746 S.W.2d 642, 646 (Mo.App.1988). Three elements must be present for estoppel to apply: first, there must be an admission, statement, or act inconsistent with a claim afterwards asserted and sued upon; second, action by the other party on the faith of such admission, statement, or act; and third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act. *Pinnell v. Jacobs,* 873 S.W.2d 925, 927 (Mo.App.1994). The party asserting estoppel must establish each essential element by clear and satisfactory evidence. *Id.*

The first element necessary for estoppel to apply is that Dr. Crist must have represented that Roberts Road would be completed through the subdivision and his recent representation to build a cul–de–sac on Roberts Road must be inconsistent with his prior representation to continue Roberts Road. The City's evidence established this element. Dr. Crist was involved throughout the development of all three parcels of land which were originally collectively named Crist Haven. At the beginning of development of the first phase, now known as Crist Haven subdivision, Dr. Crist filed a preliminary plat which included not only the first phase of development, but also the remaining two phases. In this original plat, Roberts Road was shown on the plat to be a continuous street through all three properties. As the first two phases were platted, one to the north and one to the south of the subject property, each showed Roberts Road ending in a temporary cul–de–sac. More specifically in the final plat recorded for Weatherby West, the southern most point of Roberts

Road is marked "temporary cul-de-sac". Reasonable implication is that the cul-de-sac was temporary; that the developer's intent was that the road would not end permanently; and that when the adjoining parcel of land was developed, Roberts Road would be extended through the subdivisions. This evidence establishes that Dr. Crist previously represented that Roberts Road would be a continuous road. This representation is inconsistent with his present position that Roberts Road was not intended to be a through street.

The second element of estoppel requires the party asserting estoppel to demonstrate reliance on the representation previously made. Several individuals who were members of the Planning Commission at the time the prior Crist subdivisions were approved, testified that they relied upon the representations that Roberts Road would be a through street in approving the final plats of those subdivisions. One commissioner testified that the need for Roberts Road to be a through street was not discussed, and, therefore, the minutes do not reflect a discussion regarding such need, because the plat reflected that Roberts Road would be a through street when development was completed. The City's reliance was also demonstrated by the traffic study that was conducted in 1988. The traffic study, in part used by the City to aid planning, was premised on Roberts Road becoming a continuous street. The City relied on the fact that Roberts Road would be continuous in approving the construction of Weatherby West subdivision.

The third element necessary for application of estoppel is that the City must suffer injury if Dr. Crist is allowed to repudiate or contradict his earlier representations that Roberts Road would be a continuous road through all three subdivisions. The evidence adduced at trial was that the City would suffer financial injury if Roberts Road was not a continuous street. A civil engineer testified that the increased traffic would cause faster deterioration of Westside Drive, which would result in higher repair costs to

the city.[1] Brit McPherson, former Chairman of the City Planning Commission, testified on behalf of the City that the City was not financially able to absorb these increased costs. The civil engineer also testified that if Roberts Road were not made continuous through the subdivisions the increased traffic resulting on existing streets would pose a safety concern. The termination of Roberts Road in the proposed addition would reduce the accessibility of emergency equipment to homes in the area, creating a fire safety problem. Satisfactory evidence was presented that the City would sustain injury if Roberts Road were not made a continuous street.

All three elements of estoppel having been established, Dr. Crist was estopped from asserting that the City could not require Roberts Road from continuing through all three subdivisions as originally presented.

### III. Denial of Order in Mandamus

The ultimate question in this appeal is whether the trial court erred in not issuing its order in mandamus compelling the City to approve Westside's preliminary plat. Westside asserts that the Commission was without discretion to deny approval of the plat and, therefore, mandamus was proper.

■■■ The extraordinary relief of mandamus has limited application. Mandamus will issue to compel the performance of a ministerial duty but not to compel the performance of a discretionary duty. *State ex rel. Kessler v. Shay,* 820 S.W.2d 311, 314 (Mo.App.1991). Mandamus will only issue when there is an unequivocal showing that the public official failed to perform a ministerial duty imposed by law. *State ex rel. Lupo v. City of Wentzville,* 886 S.W.2d 727, 731 (Mo.App.1994).

■■■ The authority of City authorities is limited in considering approval of plats. Once determined that a preliminary plat meets the requirements in the statutes and any applicable ordinances, the Board has no discretion to refuse to approve the proposed plat. *State ex rel. Schaefer v. Cleveland,* 847 S.W.2d 867, 873 (Mo.App.1992). However,

---

1. The Plat of the City of Weatherby Lake, revised in 1985, reflects that without the continuation of Roberts Road only one artery leading to the entrances of these various subdivisions along the west portion of the community would exist.

the Commission and Council have considerable discretion in determining whether the subdivision plat meets the standards established by ordinance. *Id; State ex rel. Menkhus v. City of Pevely,* 865 S.W.2d 871, 874 (Mo.App.1993).

■ When proceeding under the subdivision ordinance, the Commission and the Council are acting in an administrative capacity and not in a legislative capacity. *Schaefer,* 847 S.W.2d 867. As such, when their decision resolves issues of fact, the reviewing court is not authorized to substitute its judgment for the judgment of the administrative body if such findings of fact are supported by competent and substantial evidence. *State Bd. of Registration for the Healing Arts v. Masters,* 512 S.W.2d 150, 157 (Mo.App.1974). If the decision of the Board involves an interpretation or application of the law, then those matters are within the independent judgment of the reviewing court and subject to correction where erroneous. *Id.* at 158.

Unlike *Menkhus* and *Schaefer,* where the preliminary plats were denied approval despite the Commission's finding that they were in accordance with city regulations, the Commission in this case recommended that the City Council deny approval of the preliminary plat because it did not meet the requirements of the city's subdivision regulations. The refusal to approve the preliminary plat was based on three reasons: 1) the termination of Roberts Road in a cul-de-sac; 2) inadequate sight distance at the entrance to Westside Drive; and 3) lack of widening and improvement to Westside Drive. The termination of Roberts Road in a cul-de-sac is the key issue in this case and determinative.

■ The City found that Roberts Road is not shown as a through street on the plat and the plat was denied. The underlying basis for the City's denial of the plat is found in section 4.3–1(J)(1) of the City's subdivision regulations. This regulation in pertinent part provides:

(1) Construction of Roads—The arrangement of streets shall provide for the continuation of principal streets between adjacent properties when such continuation is necessary for convenient movement of traffic, effective fire protection, for efficient provision of utilities, and where such continuation is in accordance with the city plan.

■ Westside contends that the City cannot use this regulation to deny approval because there was no city plan that would require Roberts Road to continue. Under section 89.340, RSMo 1989, the commission is to make and adopt a city plan for the physical development of the municipality. Westside argues that since no document labelled "City Plan" was found in the county records or city records, no city plan existed. However, a city plan need not constitute a single document. *See State ex rel. Chiavola v. Village of Oakwood,* 886 S.W.2d 74 (Mo.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1724, 131 L.Ed.2d 582 (1995). When no comprehensive plan exists, as in this case, whether the requirement of creating a general plan to control and direct the use and development of property within the community has been satisfied must be determined on a case-by-case basis. *Id.* at 82.

■ The purpose of a city plan is to guide the development and use of land within the city. The City of Weatherby Lake has a city plan for its development. In 1960, after incorporation of the City, the official map of the village was prepared and recorded. It was intended to be a planning tool in the development of the community. This map was updated as subdivisions developed within the City. The City also enacted regulations under its zoning ordinance that govern the requirements of zoning and development. A comprehensive plan may be validly enacted in the zoning ordinance itself and does not need to exist in a separate form. *Chiavola,* 886 S.W.2d at 80. The map of the City of Weatherby Lake along with recorded plats of the subdivisions and the zoning ordinances reflect a general plan to control and direct the use and development of property within the municipality.

As the City evolved, changes to the original map reflect the ultimate resulting municipality. Dr. Crist first approached the city in 1974 with his proposal for the three phases of development, originally collectively known as Crist Haven. The property was later divided into Crist Haven, Weatherby West, and the current property (Weatherby Lake Estates).

Dr. Crist's preliminary plat showed the continuation of Roberts Road throughout these three properties. As previously noted, the City relied on this representation as it saw to the development of Weatherby Lake.

The Planning Commission and the City Council found that traffic safety, effective fire protection, and compliance with the plan developed for the City necessitated the continuation of Roberts Road throughout the properties.[2] The preliminary plat that ended Roberts Road within the Weatherby Lake Estates in a permanent cul–de–sac rather than continuing it through the subdivision, therefore, did not comply with regulation 4.3–1(J)(1) that requires continuation of principal streets between adjacent properties. The City properly denied the preliminary plat.

The judgment is affirmed.

All concur.

2. Westside asserts that the city regulation requires the City to show that the continuation would be necessary for all four reasons listed; convenient movement of traffic, effective fire protection, efficient provision of utilities and in accordance with the City plan. This would result in an unreasonable construction of the regulation. It would be an absurd result if the continuation of the street was necessary for fire protection, but the city could not require the continuation because it was not necessary for provision of utilities.