**Charles E. GUNTER Jr. and Joy A. Gunter, Respondents,**

v.

**CITY OF ST. JAMES, Missouri, Charles Walls, Jimmie Wayne White, Margaret Roberts, Jesse Singleton, Stanley Johnson, Sam Auxier, Don Moore, and Rick Krawiecki, Appellants.**

**No. 27072.**

Missouri Court of Appeals, Southern District,

Division Two.

April 27, 2006.

668

W.H. Thomas, Jr., Emily Woodward, Thomas, Birdsong & Mills, P.C., Rolla, for appellants.

J. Kent Robinson, Williams, Robinson, Rigler & Buschjost, P.C., Rolla, for respondents.

ROBERT S. BARNEY, Judge.

The litigation underlying this appeal involves an attempt by Charles E. Gunter and Joy A. Gunter ("Respondents") to acquire from the City of St. James, through its City Council, formal approval for the "re-subdivision" of their Lot 33 of Verkamp's Sixth Addition to the City of St. James ("Lot 33").[1] The re-subdivision of Lot 33 reflects Respondents' attempt to build a home and fifty-foot-wide street ("Gunter Lane") traversing Lot 33 which would connect to an established public thoroughfare, Amanda Avenue, and which would also eventually connect to a ten-acre tract of land on the other side of Lot 33 that Respondents proposed to develop into a subdivision. To accomplish these goals, Respondents submitted over a period of some twelve months various proposals, as more fully set out below, to officials of the City, the City Planning and Zoning Commission ("the Commission"), the Board of Adjustment and the City Council.

After Respondents presented their final plat for the re-subdivision of Lot 33, along with plans, profiles and other specifications required by the St. James City Code ("City Code"), the Commission did not approve the final plat for the re-subdivision of Lot 33 nor was the final plat approved by the City Council. Respondents then brought their suit in seven counts against Appellants.[2]

Following a hearing on the matter, the trial court entered its judgment dated April 29, 2004, and sustained Respondents' motion for summary judgment: as to Count I of their petition by ordering the City and its City Council "in mandamus to approve [Respondents'] aforesaid subdivision plat ...;" as to Count VII by "[ordering that the City] may not compel [Respondents] to re-subdivide Lot 33 ... prior to the use of said land by [Respondents] as a road;" and as to Count V by awarding damages against Appellants for their violation of certain U.S. Constitutional rights, explained below. Appellants now raise three points of trial court error.[3]

In our analysis we are guided by the following legal precepts. "Rule 74.04 governs motions for summary judgment ..." as well as motions for partial summary

---

**1.** It is undisputed that the City of St. James ("the City") is a Missouri municipal corporation of the fourth class, organized pursuant to section 79.010. The individuals listed above as Appellants are all members of the "duly elected City Council of the City ..." ("the City Council").

Unless otherwise stated, all statutory references are to RSMo 2000 and all rule references are to Missouri Court Rules (2005).

**2.** In Count I of their petition, Respondents sought mandamus to compel Appellants to approve their final plat for re-subdivision of their Lot 33; in Count V they sought damages against Appellants pursuant to "U.S.C. Title 42, Section 1983," for violations of certain U.S. constitutional rights; and in Count VII

they sought a declaratory judgment declaring they could construct a road across their Lot 33 without the necessity of re-subdividing Lot 33. Before trial, Respondents voluntarily dismissed the remaining counts of their petition.

**3.** It should be noted that Appellants have previously appealed the trial court's judgment in favor of Respondents as to their Counts I and VII. This Court dismissed Appellants' appeal for lack of a final judgment, determining that at "the very least" the "issue of damages, attorney's fees and costs of the suit remain undecided." *See Gunter v. City of St. James,* 91 S.W.3d 724, 726–27 (Mo.App.2002). The trial court then entered its April 29, 2004, judgment, as outlined above.

judgment. *In re Estate of Clifton*, 69 S.W.3d 500, 502 (Mo.App.2001); *see also Kanton v. Luettecke Travel Serv., Inc.*, 901 S.W.2d 241, 243 (Mo.App.1995). "In reviewing a grant of partial summary judgment, we examine the entire record to determine whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law." *Moran v. Kessler*, 41 S.W.3d 530, 532–33 (Mo.App.2001). "A motion for summary judgment will be granted if 'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Letsinger v. Drury College*, 68 S.W.3d 408, 410 (Mo. banc 2002) (quoting Rule 74.04(c)(3)).

"On appeal from a summary judgment, this Court reviews the record in the light most favorable to the party against whom the judgment was entered." *Id.; see ITT Comm. Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "This Court does not defer to the trial court's judgment granting summary judgment because review is *de novo.*" *Letsinger*, 68 S.W.3d at 410 (emphasis added). Lastly, "[t]he propriety of summary judgment is purely an issue of law." *Moran*, 41 S.W.3d at 533.

The record reveals that on May 10, 1999, Respondents purchased "all of Lot 33 of Verkamp's Sixth Addition ...," a lot located in a fifty-lot residential neighborhood in St. James, Missouri. Prior to purchasing Lot 33, Respondents inquired of City officials about building a home and a street on Lot 33 and submitted a preliminary plat proposal to the City Engineer. Respondents intended to acquire land near Lot 33 and build a new subdivision on that property which would be accessed by the street they proposed to build on Lot 33.[4] The City Engineer sent Respondents a letter on March 31, 1999, informing them that "there will be no problem issuing a building permit for a house to be built on Lot 33 based on the information that is provided in your drawing of the proposed house and street." The letter also stated that the proposed "drawing indicates that [Respondents] would still meet the minimum setback requirements for a residential lot" and that there was "nothing in the city codes that would prevent [Respondents] from doing what [they] have in mind for that lot."

Thereafter, Respondents began the process of acquiring Lot 33; had the lot surveyed and staked per their proposal; and began to clear and prepare the land for construction. During the week of the aforementioned activities, the City performed a visual inspection of the property on at least two occasions and made no comments to Respondents about any problems relating to their project.

Respondents were issued a building permit by the City on May 10, 1999, and Respondents then began clearing a portion of the land upon which the street was to be constructed. However, Respondents were notified four days later by the City Engineer that a home being constructed on neighboring Lot 34 was built too close to the proposed roadway site on Lot 33, in violation of the setback requirements of the City Code, and that these issues would need to be dealt with by the Commission.

The Commission met on May 20, 1999, and at its hearing comments were heard from Respondents and members of the public. The Commission recommended to the City Council "not to accept the proposal for dedicating Gunter Lane to the city as a proposed street," and on September 7, 1999, the City Council "unanimously

---

4. Respondents ultimately acquired ownership of ten acres located adjacent to and "behind" Lot 33 on September 28, 1999.

agreed to uphold [the Commission's earlier] recommendation to not accept [Respondents'] ... proposal .... to re-subdivide [L]ot 33 .... "

Respondents then submitted to the Commission on October 22, 1999, a revised subdivision plat for the subdivision of Lot 33 which also included a new plat for the creation of an additional subdivision on the ten acres Respondents had acquired near Lot 33 ("the Gunter Subdivision"), as well as a "Petition for Annexation" for the Gunter Subdivision. The Commission met on November 17, 1999, to consider Respondents' proposals. The Commission recited in its minutes that Respondents'

> request is in three parts as follows: # 1 Acceptance of the re-subdivision of [L]ot 33 of Verkamp's 6th addition to include a portion of that lot being dedicated to the City for a proposed street. # 2 a request to annex 10 acres adjoining Verkamp's 6th and 7th additions and # 3 to accept a preliminary plan for a proposed subdivision on the ten acres.

The Commission accepted all three of Respondents' requests, but made its findings contingent on the grant of the necessary variances by the Board of Adjustments. Respondents submitted to the Board of adjustments a request for variances relating to their request to subdivide Lot 33. On January 4, 2000, the Board of Adjustments granted Respondents the requested variances on Lot 33. Soon thereafter, Respondents submitted their final plat for the subdivision of Lot 33 with accompanying documents to the Commission.

At the Commission hearing on March 23, 2000, the City Engineer stated that having reviewed the plats submitted, they were "in compliance with the requirements of the Planning and Zoning section of the St. James Code of Ordinances." However, following a tie vote by the Commission, the Commission's "recommendation to the [City Council] was that the [City Council] not accept the request from [Respondents] *because a better route into the proposed Gunter Subdivision is needed.*" (Emphasis added). Thereafter, on April 3, 2000, the final plat for the subdivision of Lot 33 was submitted to the City Council, but was not approved. No written reason was given for the disapproval.

Turning now to Appellants' first point of trial court error, it reads as follows:

> The trial court erred in sustaining [Respondents'] ... motion for summary judgment because (A) resubdivision of Lot 33 is required by the City Code in that [Respondents'] proposal for a street on Lot 33 meets the definition of subdivision under the code and (B) opening a public or private street through Lot 33 would violate the [C]ity's R–1 zoning regulations restricting use of the land in that R–1 uses do not include streets.

We observe preliminarily that the "[t]he interpretation of an ordinance is a question of law for this Court." *State ex rel. Sunshine Enters. of Missouri, Inc. v. Bd. of Adj. of City of St. Ann,* 64 S.W.3d 310, 312 (Mo. banc 2002). "This Court gives effect to the intent of the enacting legislative body, based on a review of the whole ordinance." *Id.*

■ We determine that the trial court erred as a matter of law in sustaining that part of Respondents' motion for summary judgment, pursuant to their Count VII, *on the basis that Respondents may use their property for street purposes without the requirement that they first obtain approval from the City for a re-subdivision plat.* This is because section 25–45 of the City Code provides, in pertinent part, that the term "subdivision" means "the improvement of one or more parcels of land for residential ... structures ... involving the division or allocation of land for the opening ... of any *street.*" (Emphasis added). Additionally, as Appellants note, "street" is

also defined in section 25–45 of the City Code as, "[a]ll property dedicated or intended for *public or private use* for access to abutting lands. . . ." (Emphasis added).

The City Code, in section 25–82, also sets out under "Division 4 IMPROVEMENTS" that "[a]ll streets and alleys within the platted area which are dedicated for public use shall be brought to the grade approved by the [C]ity [C]ouncil and after receiving the report and recommendations of the city engineer." Additionally, City Code section 25–51 holds that it is "unlawful for the owner . . . within the corporate limits of the city to subdivide or lay out such land into . . . streets . . . unless by plat in accordance with the laws of the State of Missouri and the provisions of these regulations." As Appellants correctly maintain, because Respondents' "proposal is a subdivision involving laying out the land into a street . . . [section] 25–51 requires platting." [5]

■ With that being said, however, we are still compelled to *affirm* the trial court's judgment in mandamus, pursuant to Count I of Respondents' petition, which ordered the City and its City Council to approve Respondents' *final, submitted re-subdivision plat of Lot 33.*

The record clearly shows Respondents ultimately submitted their proposal to the City to *formally* "re-subdivide" Lot 33 to include a street that traverses the lot, and then expressly sought to dedicate the street to the City for public use. This course of action was squarely recognized by the trial court in paragraph 4 of its

judgment as being the proper procedure mandated by the City Code, to-wit:

[s]hould [Respondents] seek to have that portion of their property they intend to use for street purposes dedicated for public use, then, by reason of the fact that said property is situated in a platted subdivision, and said proposed dedication would necessitate a re-platting of a portion of said subdivision an acceptance of said dedication by the City, then [Respondents] must adhere to the subdivision regulations of said City.

As previously set out in some detail, Respondents went to great lengths to present various plat proposals not only to the Commission but also to the Board of Adjustments and the City Council in their attempts to have the latter's approval of their final submission. Even at the Commission hearing on March 23, 2000, the City's own Engineer stated that having reviewed the plats submitted, they were "in compliance with the requirements of the Planning and Zoning section of the St. James Code of Ordinances." However, following a tie vote by the Commission, the Commission's "recommendation to the [City Council] was that the [City Council] not accept the request from [Respondents] *because a better route into the proposed Gunter Subdivision is needed.*" (Emphasis added). The City Council adopted the Commission's recommendations without comment; hence, we can infer that the City Council's determination to deny approval of the submitted re-subdivision of Lot 33 was largely bottomed on the City

---

5. In so holding, we are mindful of that genre of cases best exemplified by *Vinyard v. St. Louis County,* 399 S.W.2d 99 (Mo.1966). In *Vinyard,* the court held that the conveyance of platted lots, which contained a reservation of a twenty-five-foot strip from each lot for use as an access road to an adjacent tract, was not a "subdivision" within the relevant ordinances. *Id.* at 108. However, the *Vinyard* holding was based on certain express "exceptions" found in the "notes" to the "Subdivision Regulation[ ]" ordinances that excluded, *inter alia,* the necessity of the submission of a plat to the Commission upon the sale of "land in subdivisions previously recorded." *Id.* at 107. However, no such "exceptions" are found in the City Code pertaining to the instant matter.

Council's argument that a "better route into the proposed Gunter Subdivision is needed." However, our review of that part of the City Code submitted to us by Appellants does not make an express provision permitting the City Council to deny a tendered plat based solely on the express provision that a "better route is needed." We are also hindered in our review by the City Council's failure to expound on the reasons for its determination.

"When proceeding under the subdivision ordinance, the Commission and the Council are acting in an administrative capacity and not in a legislative capacity." *State ex rel. Westside Dev. Co., Inc. v. Weatherby Lake*, 935 S.W.2d 634, 640 (Mo. App.1996). "As pointed out in [*Southern Coop. Dev. Fund v. Driggers*, 696 F.2d 1347 (11th Cir.1983) ], the exercise of discretion and judgment vested in [an] administrative body is to determine whether a plan meets the zoning or subdivision requirements. It is not a discretion to approve or disapprove a plan that does meet the requirements." *State ex rel. Schaefer v. Cleveland*, 847 S.W.2d 867, 873 (Mo.App. 1992); *see also State ex rel. Menkhus v. City of Pevely*, 865 S.W.2d 871, 874 (Mo. App.1993) (holding that "the only discretion which may be exercised in approving subdivision plats is the discretion to determine whether the plat meets the requirements outlined in the statutes and any applicable ordinances adopted pursuant to these statutes"). "The law does not permit administrative bodies to exercise an arbitrary and subjective authority over the granting or denying of subdivision plats." *State ex rel. Schaefer*, 847 S.W.2d at 873. "Once determined that a preliminary plat meets the requirements in the statutes and any applicable ordinances, the [City, the Commission, and the City Council] ha[ve] no discretion to refuse to approve the proposed plat." *State ex rel. Westside Development Co., Inc.*, 935 S.W.2d at 639. It is only in the determination of "whether the

subdivision plat meets the standards established by ordinance ..." that there is any discretion granted to the aforementioned administrative bodies. *Id.* at 690; *see also State ex rel. Menkhus*, 865 S.W.2d at 874. As such, the administrative body in " 'weighing the approval or disapproval of a subdivision plan ... may not look beyond the question of whether the plan satisfies the town subdivision regulations.' " *State ex rel. Schaefer*, 847 S.W.2d at 872 (citation omitted). "The approval of a preliminary plat that meets the subdivision and zoning requirements is a ministerial act, and mandamus is the proper remedy in seeking to review the denial of such a plat." *Furlong Companies, Inc. v. City of Kansas City, Missouri*, 189 S.W.3d 157, 165 (Mo.2006). Point One is affirmed in part and overruled in part.

For the sake of clarity, we now review Appellants' third point out of order. In their third point relied on, Appellants maintain the trial court erred in awarding damages against "all [Appellants] because damages cannot be awarded against the council members in a personal capacity in that the course of proceedings indicated that the liability sought to be imposed was that of official capacity."

42 U.S.C. 1983, provides for a "[c]ivil action for deprivation of rights," and sets out that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial of-

ficer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

"[T]he 'purpose of 42 U.S.C. [section] 1983 is to deter or prevent persons with state authority from using that authority to deprive individuals of federally-guaranteed rights.' " *Care and Treatment of Burgess v. State*, 72 S.W.3d 180, 185 (Mo.App.2002). "Both state and federal courts are authorized to hear [section] 1983 cases." *Id.*

Recently this state's highest court in *Furlong*, set out that "[t]here are two elements that must be established to prevail on a claim under [42 U.S.C.] section 1983." [6] *Furlong*, 189 S.W.3d 157, 170 (Mo.2006). "First, a claimant must establish 'a protected property interest to which the Fourteenth Amendment's due process protection applies.' " *Id.* (quoting *Bituminous Materials, Inc. v. Rice County, Minn.*, 126 F.3d 1068, 1070 (8th Cir.1997)). Second, "[a] claimant must also establish that the governmental action was 'truly irrational.' " *Furlong*, 189 S.W.3d at 170 (quoting *Bituminous Materials*, 126 F.3d at 1070). The Court also recognized that the "truly irrational standard has been further defined as 'something more than arbitrary, capricious, or in violation of state law.' " *Furlong*, 189 S.W.3d 157, 170 (Mo.2006) (quoting *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104

---

6. In *Furlong*, 189 S.W.3d 157, 160 (Mo.2006), Furlong Companies ("Respondent") sought approval of a preliminary plat, by which it sought to subdivide 2.76 acres into three lots for commercial use, including two fast food restaurants and a car wash. Ultimately, City of Kansas City through its City Council ("Appellant") voted not to approve the preliminary plat and did so without making findings of fact or conclusions of law. *Id.*, at 161. Respondent sued Appellant "seeking an order of mandamus compelling [Appellant] to approve [Respondent's] plat application and also seeking damages under 42 U.S.C. section 1983." *Id.*, at 162. The trial court ordered Appellant in mandamus to approve the preliminary plat, and found Appellant's decision to deny approval was "unlawful, unreasonable, arbitrary, and capricious." *Id.* The Supreme Court of Missouri agreed. *Id.*, at 171. Our high court also affirmed the trial court's damage award against Appellant, pursuant to 42 U.S.C. section 1983. *Furlong*, 189 S.W.3d at 171–72. It determined that Appellant, through its City Council and the City Council's Planning, Zoning and Economic Development Committee ("the P & Z Committee"), engaged in actions over a 287–day period which rose to the level of "truly irrational" conduct in its dealings with Respondent. *Id.*, at 171–72. The Court related that under Appellant's valid ordinances and state law Respondent was entitled to have its preliminary plat approved and that the City Council acted in intentional disregard of its own valid ordi-

nances and of state law in denying Respondent's plat application. *Id.*

Further, in finding that substantial evidence supported the trial court's finding that Appellant acted in a "truly irrational manner under 42 U.S.C. section 1983," the court in *Furlong* cited as examples of irrational behavior, the fact that Appellant's "city plan commission ignored the advice of the plats review committee recommending approval and denied Respondent's preliminary plat." *Id.*, at 170. Further, Respondent's attempts to learn the reason for denial were rebuffed; "the city council subjected [Respondent] to numerous delays," including the completion of "two waves of traffic impact study" at the behest of the P & Z Committee, in which it was discovered that "the proposed development would have little or no impact on existing traffic conditions;" and despite the studies, the P & Z Committee "failed to vote on [Respondent's] preliminary plat, instead voting if 'off the docket.' " *Id.*, at 170–71. Additionally, while the preliminary plat made its way to the full City Council for a final vote and the "[t]he city's attorney advised, in closed session, that the city could not legally deny [Respondent's] preliminary plat," the City Council, nevertheless, voted to deny the preliminary plat application, despite the fact that the record showed submissions, such as Respondents', were generally approved within one week of submission. *Furlong*, 189 S.W.3d 157, 170–71 (Mo. 2006).

(8th Cir.1992)); *see also Frison v. City of Pagedale,* 897 S.W.2d 129, 132 (Mo.App. 1995).

■■■ Here, Appellants do not dispute the fact that Respondents had a protected property interest in their attempts to re-subdivide their Lot 33 with its attendant, proposed roadway. Appellants essentially maintain that they had a rational basis for the denial of Respondents' re-subdivision application, i.e., Respondents' failure to comply with certain City Code regulations. In their point relied on, Appellants primarily take umbrage with the trial court's assessment of damages against the *individual* members of the City Council.

We determine there was sufficient evidence supporting the trial court's determination that the City Council's conduct relating to Respondents' application for re-subdivision was truly irrational, as that term has been defined by the Missouri Supreme Court in *Furlong,* 189 S.W.3d 157, 162 (Mo.2006). Indeed, we find that the facts in the instant matter parallel those set out in *Furlong.*

As previously set out, Respondents sought in vain for approval of their re-subdivision plat in a process lasting some twelve months. On March 31, 1999, the City Engineer, on behalf of the City, informed Respondents that "there w[ould] be no problem issuing a building permit for a house to be built on Lot 33 based on the information that is provided in your drawing of the proposed *house and street;* " that there is "nothing in the city codes that would prevent you from doing what you have in mind for [Lot 33];" and that their proposal met all of the City's setback requirements. (Emphasis added). Based on the foregoing, Respondents incurred expenses in preparation for building their home and street. They had the land surveyed and staked for the creation of the street and a foundation for a home and began construction. Respondents were issued a building permit by the City on May 10, 1999, after at least two visual inspections of the property by the City. It was only after construction began on adjacent Lot 34 that problems arose with the construction of the street and home on Lot 33. The City Engineer informed Respondents these new issues would need to be dealt with by the Commission. The Commission then recommended to the City Council "not to accept the proposal for dedicating Gunter Lane to the city as a proposed street," and on September 7, 1999, the City Council upheld the Commission's recommendation "not to accept the proposal to re-subdivide Lot 33."

Accordingly, Respondents withdrew their original proposal for Lot 33 and submitted a revised subdivision plat on October 22, 1999, for the subdivision of Lot 33, and included a new plat for the creation of an additional subdivision on the ten acres Respondents had acquired near Lot 33; they also included in their proposal a petition for annexation. Respondents' subdivision proposal was then granted by the Commission on November 17, 1999, and Respondents were subsequently granted a variance relating to their request to subdivide Lot 33 by the Board of Adjustments on January 4, 2000. Indeed, after examining the final subdivision plat submitted to the Commission, the City Engineer informed the Commission on March 23, 2000, that the plat was "in compliance with the requirements of the Planning and Zoning section of the St. James Code of Ordinances." Despite this recommendation, the Commission ultimately "recommend[ed] to the [City] [C]ouncil ... that [it] not accept the request from [Respondents] because a better route into the proposed Gunter Subdivision is needed." On April 3, 2000, the final plat for the re-subdivision of Lot 33 was submitted to the City Council, but was not approved. As previously set out, no written reason was given for the disapproval.

Despite the foregoing conduct, which we attribute to the City Council as an entity, we do not agree with the trial court that the individual conduct of the members of the City Council in this matter show that any of them acted in "bad faith" as that term is used in *Furlong,* 189 S.W.3d 157, 171 (Mo.2006).[7] As best we discern from the record, the individual members of the City Council appear to have acted "with the best intentions of serving those who elected them." *Id.* at 171. While a decision might be "so corrupted by the personal motives of local government officials that due process rights are implicated," *Bituminous,* 126 F.3d at 1071, the record is devoid of such a showing in the instant matter regarding the individual members of the City Council.[8] *See also Brady v. Town of Colchester,* 863 F.2d 205, 216 (2d Cir.1988) (punishing a political opponent).

▬▬ Additionally, we are not convinced that Respondents, in their petition, asserted a recognizable cause of action against the members of the City Council, either in their individual capacity *or* in

their official capacity.[9] Despite Respondents' designation of the individual names of the members of the City Council in the pleading caption, in the body of the pleading and in their "Count V–U.S.C. Title 42, Section 1983 Action," Respondents sought only "judgment against the City in the [original] sum of $15,000.00" as well as interest, costs and recovery of their reasonable attorney fees. Also in paragraph "3" of their petition, the "City" was described exclusively as "The City of St. James, Missouri, . . . a Missouri municipal corporation of the fourth class pursuant to Chapter 79, RSMo. . . ." "Pleadings are 'of the greatest utility in defining issues of a case.'" *Weber v. Weber,* 908 S.W.2d 356, 359 (Mo. banc 1995) (quoting *Young v. Hall,* 280 S.W.2d 679, 681 (Mo.App.1955)). "The legal character of a pleading is determined by its subject matter and not its designation to the extent that courts ignore the denomination of a pleading and look to its substance to determine its nature." *Id.* "We recognize that it is the substance of a pleading and not the title that is controlling concerning the cause of

---

7. In its opinion in *Furlong,* the Supreme Court of Missouri determined that

> The facts of this case go beyond mistaken, arbitrary, or capricious application of the law. It is clear from the record that all or nearly all members of the city council believed that [Respondent's] proposed project would be bad for this area of Kansas City. To this extent, they were acting in good faith and with the best intentions of serving those who elected them. However, it is equally clear that under the existing and valid ordinances of Kansas City and the established law of this State that Furlong was entitled to have its preliminary plat approved[,] . . . the city council intentionally delayed and denied Furlong its property rights in disregard of the law. When government acts with intentional disregard of its own valid law, knowing that its action deprive individuals of their property rights, such action is 'truly irrational.'

*Furlong,* 189 S.W.3d 157, 171 (Mo.2006).

8. In *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the United States Supreme Court held that a "municipality may not assert the good faith of its officers or agents as a defense to liability under [section] 1983."

9. *See also Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). The United States Supreme Court in *Brandon* held that a "judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." *Brandon,* 469 U.S. at 471–72, 105 S.Ct. 873. The court further stated that "'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 472 n. 21, 105 S.Ct. 873 (quoting *Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

action stated." *Boshers v. Humane Soc. of Mo., Inc.*, 929 S.W.2d 250, 254 (Mo.App. 1996).

■ Here, the record is devoid of a showing that Respondents pleadings were either expressly amended or amended by implied consent at trial so as to make specific, substantive claims against members of the City Council, either in their individual or official capacities. "[O]ne cannot recover for a cause of action not pleaded." *Memco, Inc. v. Chronister*, 27 S.W.3d 871, 875 (Mo.App.2000). While we affirm the damage award against the City through its City Council, we reverse the trial court's award of damages against the members of the City Council in their individual or official capacities. Point Three is well taken.

■ Turning now to Appellants' second point relied on, Appellants allege the trial court erred in awarding the amount of $9,322.05 as damages to Respondents.[10] Appellants argue that Respondents "had no right to recover damages in that they incurred costs without final approval of the City, failed to properly store or attempt timely return of materials, and changed their building plans."

We will affirm the trial court's judgment as to damages unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Although this Court defers to the trial court's findings of fact, we do not defer to the trial court's determinations of law. *City of Kansas City v. Hon*, 972 S.W.2d 407, 409 (Mo.App.1998). The weight of the evidence is determined by its effect in inducing belief. *White River Dev. Co. v. Meco Sys., Inc.*, 806 S.W.2d 735, 737 (Mo.App.1991). A judgment should be set aside as being against the weight of the evidence only with caution and with a firm belief that the judgment is wrong. *Id.*

"The proper measure of damages is a question of law for determination by the trial court." *Cornejo v. Crawford County*, 153 S.W.3d 898, 902 (Mo.App.2005). "The trial court's findings relating to actual damages are entitled to great weight on appeal and will not be disturbed unless the damages awarded are clearly wrong, could not have been reasonably determined, or were excessive." *John R. Boyce Family Trust v. Snyder*, 128 S.W.3d 630, 640 (Mo. App.2004). "If an award of damages is within the range of the evidence, an award of a particular amount may be considered responsive even though it does not correspond precisely with the amount claimed."[11] *Id.*

10. In its judgment, the trial court premised its damage award of $9,322.05 on the basis of the "acts of the City and its officers, elected officials, and agents" which "violated the due process and equal protection rights of [Respondents], thereby depriving them of the rights, privileges and immunities secured by the United States Constitution, in violation of Section 1983, Title 42 of the United States Code." Because we affirm the damage award on the basis of a substantive due process violation we need not address the question of whether there has been a violation of Respondents' rights to equal protection under the law. The trial court also granted to Respondents attorney fees in the amount of

$12,055.00 together with costs. It is our view that Appellants challenge the award of attorney fees solely on the basis that it was error for the trial court to award any damages pursuant to 42 U.S.C.1983, *et seq.*

11. The trial court's judgment detailed that the damages incurred by Respondents in the amount of $9,322.05 included the following:

    (a) $25.00 for the first building permit,
    (b) $1,494.00 for foundation concrete work,
    (c) $2,552.00 for building materials,
    (d) $2,586.05 for trusses, and
    (e) $2,665.00 for surveying and engineering work.

Here, Respondents testified at trial that they had ordered the trusses and other building materials before the problem with the setback relating to Lot 34 had arisen, and that they had attempted to preserve the materials purchased for as long as possible. Respondents testified that they attempted to return some of the items but had been unable to do so because of the lapse in time from the date of purchase. "[T]he credibility of witnesses and the weight to be given to their testimony is a matter for the trial court, which is free to believe none, part or all of the testimony of any witness." *Ridgway v. TTnT Dev. Corp.*, 126 S.W.3d 807, 812 (Mo.App.2004). As such, the trial court here was free to believe Respondents' testimony and evidence and to disbelieve the evidence and testimony presented by Appellants. The award of $9,322.05 was "within the range of the evidence ..." offered at trial and, thus, was proper. *John R. Boyce Family Trust*, 128 S.W.3d at 640. The trial court's award of damages was supported by the evidence. Point Two is denied.

Accordingly, that part of the judgment ordering in mandamus that the City Council approve the "subdivision plat" of Respondents, as more fully set out in this opinion, is affirmed; that part of the judgment holding that the "City of St. James may not compel [Respondents] to re-subdivide Lot 33 ... prior to the use of said land by [Respondents] as a road," is reversed; that part of the judgment awarding damages to Respondents and against the members of the City Council, individually, in the amount of $9,322.05, attorney fees in the amount of $12,055.00 together with costs is reversed; however, that part of the judgment awarding damages in favor of Respondents and against the City through its City Council as an entity, in the amount of $9,322.05, and attorney fees

in the amount of $12,055.00, together with costs, is affirmed.

SHRUM, P.J., and BATES, C.J., concur.