# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3625

_____

| | | |
|---|---|---|
| Charles E. Gunter, Jr., | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| William J. Morrison, Individually, and | * | |
| in his official capacity as Mayor of the | * | Appeal from the United States |
| City of St. James, Missouri; Louis | * | District Court for the Eastern |
| Gorman; Daryl James, Adolph Mueller, | * | District of Missouri. |
| individually and in their official | * | |
| capacities as Members of the Board | * | |
| of Public Works of the City of | * | |
| St. James, Missouri; City of St. James; | * | |
| Ira Wilson, | * | |
| | * | |
| Defendants– Appellees. | * | |

_____

Submitted: April 13, 2007
Filed: August 15, 2007

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Charles E. Gunter, Jr., is a city employee in St. James, Missouri. He accuses Mayor William J. Morrison and the Board of Public Works of refusing to promote him because he sued the City. The district court granted the defendants summary judgment. This court reverses and remands.

I.

Gunter has worked for the city Utilities Department for 27 years. In May 1999, he bought land, outside the city, for residential development. Needing an access road, he purchased an adjoining lot, Lot 33, inside the city. The City initially approved Gunter's plan to build a house and road on Lot 33, but later refused. After unfruitful meetings and hearings, Gunter sued in May 2000.

In February 2002, the state trial court granted partial summary judgment to Gunter, ordering "a preemptory writ of mandamus to force the City to approve the final resubdivision plat" and "declaratory judgment . . . that Respondents had complied with all relevant codes and statutes in order to legally subdivide Lot 33 and that the City be compelled to approve the subdivision." *Gunter v. City of St. James*, 91 S.W.3d 724, 725 (Mo. App. 2002). Because the trial court did not rule on Gunter's other claims (including damages, costs, and attorneys fees, a takings claim, and relief under 42 U.S.C. § 1983), in December 2002 the City's appeal was dismissed for lack of a final judgment. *Id.* at 726-27.

In April 2004, the trial court ruled for Gunter, awarding him $9,322 in damages and $12,055 in attorneys fees and costs. The court of appeals upheld this judgment against the City, based on "sufficient evidence supporting the trial court's determination that the City Council's conduct relating to Respondents' application for re-subdivision was truly irrational." *Gunter v. City of St. James*, 189 S.W.3d 667, 676 (Mo. App. 2006). Finding no "bad faith," however, the court reversed as to the individual members of the City Council. *Id.* at 677-78.

Meanwhile, in November 2003 Utilities Superintendent Jim Holt took a leave of absence. The Mayor appointed Brian Cornick as Acting Superintendent; the Utilities Board approved. Holt returned to work in March 2004; the Utilities Board created the position of Assistant Superintendent. Gunter applied, along with Cornick and Michael Licklider. At a meeting on March 8, the Board hired Cornick as

Assistant Superintendent. When Holt retired in May 2005, the Board hired Licklider as Superintendent; Gunter, Cornick, and one other person also applied.

Gunter claims he was the most qualified applicant for both positions, but was rejected because of his ongoing lawsuit against the City. A councilman testified he overheard the Mayor declare after a council meeting there was "no way in hell that Charlie Gunter was going to get that position." Councilman David Watkins testified:

- The Mayor and other councilmen frequently referred to Gunter "derogatorily," as "an asshole, an SOB," and that the Mayor called Gunter a "shit disturber"
- Several other councilmen agreed that Gunter was not being promoted because of his "wee-wee contest with the Mayor and other issues"
- He once asked a councilman, "Has Charlie done something wrong? Was there something wrong with his qualifications, or is it this wee-wee contest with the Mayor?" The councilman said "the real problem" was "the wee-wee contest with the Mayor"
- The "wee-wee contest" goes "back to the subdivision plat permit issue that's involving the first lawsuit"

Gunter himself avers that another councilman admitted to him, "I should have the position of Assistant Superintendent, that I deserved it and that if I did not have the lawsuit against the City that I would be the one being promoted." The City contends Gunter was passed over for legitimate reasons, which the Mayor and the Utility Board have articulated.

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); **FED. R. CIV. P. 56(c)**. "We review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences, without resort to speculation, in favor of the non-moving party." *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005).

-3-

## II.

Gunter claims he was not promoted in retaliation for suing the City. The right to petition the government – or to access the courts – is analyzed the same as the right to free speech. *See **Hoffmann v. City of Liberty,*** 905 F.2d 229, 233 (8th Cir. 1990) ("we need not determine if (or how) the petition clause is distinct from the speech clause or whether Hoffmann's grievance filing was an act of petition or of speech. As either, it was an expression subject to the same first amendment analysis"). The analysis is: Did the employee show (1) the employee did something that was speech addressing a public concern, (2) the protected activity was a substantial or motivating factor in the employer's action against the employee; unless (3) the employer shows it would have taken the same action absent the protected activity? *See **id.*** at 233. *See generally **Connick v. Myers,*** 461 U.S. 138, 146, 151 (1983) (courts must examine whether speech addresses a matter of public concern, and if so, balance the employee's right to free speech against the interests of the public employer).

## A.

The district court ruled that Gunter's lawsuit "was motivated solely by self-interest," and thus that he did not show his lawsuit addressed a matter of public concern. *Connick* makes clear, however, that whether "an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *See **Hoffmann,*** 905 F.2d at 233, *quoting **Connick,*** 461 U.S. at 148.

Viewing the facts favorably to Gunter, the record as a whole reveals that his lawsuit addressed a matter of public concern. As to content, his state-court lawsuit resulted in a judgment that over a period of some twelve months, he presented to key city agencies, including the city council, various proposals – all of which were arbitrarily and capriciously rejected. *See **Gunter,*** 189 S.W.3d at 670. The form of the speech was a (successful) lawsuit – the most formal method of speech. *See **Harrison v. Springdale Water & Sewer Com'n,*** 780 F.2d 1422, 1428 (8th Cir. 1986) ("state

-4-

officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future" ). The context of the dispute was known in the community and written about in the local newspaper. The state court of appeals ultimately found sufficient evidence that the City's conduct was "truly irrational." *See Gunter,* 189 S.W.3d at 676; *see generally Powell v. Johnson,* 405 F.3d 652, 655 (8th Cir. 2005) (plaintiff's nonfrivolous lawsuits alleging wrongdoing by Sheriff addressed matters of public concern).

The second step in the *Connick* analysis "involves balancing the employee's right to free speech against the interests of the public employer." *See Washington v. Normandy Fire Protection Dist.,* 272 F.3d 522, 526 (8th Cir. 2001), *citing Pickering v. Board of Educ.,* 391 U.S. 563, 568 (1968); *see also Sparr v. Ward,* 306 F.3d 589, 594 (8th Cir. 2002), *citing Connick,* 461 U.S. at 148 n.7 ("Both parts of the *Connick-Pickering* inquiry are questions of law for the court to decide"). The City "must demonstrate with specificity that the speech created disharmony in the workplace, impeded the plaintiff's ability to perform his duties, or impaired working relationships with other employees." *Washington,* 272 F.3d at 527, *quoting Sexton v. Martin,* 210 F.3d 905, 913 (8th Cir. 2001).

The City argues that the "fact that Appellant previously sued the City can certainly be seen as an impediment to the efficient operations of the functions of the City." The City presents no evidence that Gunter's lawsuit created disharmony in the workplace, impeded Gunter's ability to perform his duties, or impaired working relationships with other employees. *See Lindsey v. City of Orrick,* __ F.3d __ , No. 06-3299, slip op. at 10 (8th Cir. filed June 26, 2007) ("Mere allegations the speech disrupted the workplace or affected morale, without evidentiary support, are insufficient"). The evidence that (at least) the Mayor disliked Gunter is not enough to show impairment of working relationships with other employees. *See id.* at 10-11 ("Even if the Council members disliked Lindsey, this is not enough to show . . . such dislike impaired his working relationship with these individuals").

B.

As to whether the lawsuit caused denial of the promotions, the City says Gunter "has no evidence that actions were taken against him because of his first lawsuit, or that he would have received the promotion 'but for' his first lawsuit." The City also contends that it would have taken the same actions on the promotions absent Gunter's lawsuit.

On the contrary, taking the evidence most favorably to Gunter, there is evidence – comments allegedly made by the Mayor and several councilmen – that he was denied the promotion only because he sued the City. The City offers interpretations of these comments and alleges legitimate reasons for not promoting him. These arguments involve questions of fact that exceed our limited scope of review. *See Gordon v. City of Kansas City,* 241 F.3d 997, 1003 (8th Cir. 2001) ("While the *Connick-Pickering* balancing test presents a question of law for the courts to decide, any underlying facts that are material and in genuine dispute must be submitted to a fact finder"); *Cox v. Miller County R-I Sch. Dist.,* 951 F.2d 927, 931 (8th Cir. 1991) ("Whether protected conduct was a substantial or motivating factor in an employment decision is a question of fact").

III.

The district court granted summary judgment on Gunter's civil conspiracy claim. In order to prevail on a section 1983 civil conspiracy claim, a plaintiff must show, "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *See Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Viewing the record favorably to Gunter, several defendants conspired to retaliate against Gunter for suing the City; the City denied him the promotion; and he was injured as a result. "Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Nei v.*

-6-

***Dooley***, 372 F.3d 1003, 1007 (8th Cir. 2004).  Gunter's civil conspiracy claim should be allowed to proceed.

IV.

The district court found that the Mayor and the Board members are entitled to qualified immunity.  This court "review[s] the district court's conclusion on the qualified immunity issue de novo . . . look[ing] at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party."  ***Burnham v. Ianni***, 119 F.3d 668, 673 (8th Cir. 1997) (en banc).

The "threshold question" is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  ***Saucier v. Katz***, 533 U.S. 194, 201 (2001).  If no constitutional right has been violated, then the qualified immunity analysis ends.  But "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  ***Id.***  The limits of qualified immunity are defined by "the objective legal reasonableness of an official's acts."  ***Harlow v. Fitzgerald***, 457 U.S. 800, 819 (1982).  In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  ***Anderson v. Creighton***, 483 U.S. 635, 640 (1987).

Here, the district court found that the defendants were "entitled to qualified immunity because their alleged actions did not violate a constitutional right."  Gunter is the party asserting the injury and opposing the motion.  Taken most favorably to him, the facts alleged show that the defendants retaliated against him for suing the City, a violation of his constitutional right.  "An individual is entitled to 'free and unhampered access to the courts,'" because "access to the courts is a fundamental right of every citizen."  ***Harrison,*** 780 F.2d at 1427-28.  The question is whether this right was clearly established.

-7-

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202. "The issue is not whether the defendant acted wrongly, but whether reasonable persons would know they acted in a manner which deprived another of a known constitutional right." *Herts v. Smith,* 345 F.3d 581, 585 (8th Cir. 2003), *quoting Sparr v. Ward,* 306 F.3d 589, 593 (8th Cir. 2002).

In this case, a reasonable official would have known that refusing to promote Gunter because he sued the City violated his right to access the courts. This right was clearly established. *See, e.g.*, *Zar v. S.D. Bd. of Exam'rs of Psychologists*, 976 F.2d 459, 465 (8th Cir. 1992) ("A person's constitutional right of access to the courts cannot be impaired by threats or harassment in retaliation for filing lawsuits"); *In re Workers' Comp. Refund*, 46 F.3d 813, 822 (8th Cir. 1995) ("This right of court access cannot be impaired, either directly or indirectly"); *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005) ("The right of access to the courts is well-established"); *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006) (citing *Harrison* to show "it is clearly established that a government official may not 'punish [a citizen] for having exercised [her] constitutional right to seek judicial relief'").

The Mayor and the Board members are not entitled to qualified immunity.

V.

The judgment of the district court is reversed, and the case is remanded.
_____